UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTHEASTERN PENNSYLVANIA FREETHOUGHT SOCIETY, | Civil Action No. |
| Plaintiff, | |
| v. | |
| COUNTY OF LACKAWANNA TRANSIT SYSTEM, | |
| Defendant. | |

## COMPLAINT

### NATURE OF THE SUIT

1.      In violation of the Free Speech Clause of the First Amendment to the United States Constitution, Defendant County of Lackawanna Transit System ("COLTS") has refused to lease advertising space on its busses to Plaintiff Northeastern Pennsylvania Freethought Society ("NEPA Freethought Society") due to the content of the proposed advertisements and the viewpoint that COLTS inferred that NEPA Freethought Society had expressed in the ads.  NEPA Freethought Society seeks injunctive and declaratory relief pursuant to 42 U.S.C. § 1983, as well as attorneys' fees and costs under 42 U.S.C. § 1988(b), to remedy ongoing violations of Plaintiff's constitutional rights.

2.      NEPA Freethought Society brings this action as both a facial challenge to COLTS' advertising policies and a challenge to the policies as applied to NEPA Freethought Society's efforts to advertise on COLTS' busses.

## PARTIES

3.      Plaintiff Northeastern Pennsylvania Freethought Society is an unincorporated

association, with its principal office at 30 Hayes Lane, Wilkes-Barre, Pennsylvania 18702.

4.      Plaintiff's mission is to facilitate a social, educational, activist, and philosophical

coalition of atheists, agnostics, humanists, secularists, and skeptics predicated on support and

community that upholds the separation of church and state and promotes critical thinking.

5.      Defendant County of Lackawanna Transit System is a public transportation

authority operating under the Municipal Authorities Act of 1945, 53 Pa. C.S. § 5607, and

headquartered at 800 North South Road, Scranton, PA 18504.  At all times relevant to this

Complaint, COLTS acted under color of state law.

## JURISDICTION AND VENUE

6.      This action is brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth

Amendments to the Constitution.  The Court has jurisdiction over this action pursuant to 28

U.S.C. § 1331 and 28 U.S.C. § 1343.

7.      Venue is proper in this district under 28 U.S.C. § 1391 because the events giving

rise to the claims in this action occurred within the Middle District of Pennsylvania and

Defendant resides in this district.

## FACTUAL BACKGROUND

8.      COLTS has a longstanding policy of leasing advertising space on its vehicles

(inside and out), route schedules and literature, bus shelters, and other property.

9.      COLTS has opened its advertising space to the public for the purpose of raising

revenue, and not to further any other organizational policy or goal.

10.     COLTS' practice has been to exercise discretion randomly and favor some viewpoints over others.

11.     In January 2012, NEPA Freethought Society submitted an ad for publication on the outside of COLTS' busses.  The ad stated, "Atheists.  NEPAfreethought.org."  A true and correct copy of that ad is attached hereto as Exhibit A.

12.     In February 2012, COLTS rejected the ad because, as described below, COLTS believed it may spark public debate and attacked religion.

13.     The COLTS advertising policy in place at the time prohibited advertising "that is deemed in COLTS['] sole discretion to be derogatory to any . . . religion," or "that [is] objectionable, controversial or would generally be offensive to COLTS' ridership based solely on the discretion of COLTS," and further stated that "it is COLTS' declared intent **not** to allow its transit vehicles or property to become a public forum for dissemination, debate, or discussion of public issues."  June 21, 2011 COLTS Advertising Policy, attached hereto as Exhibit B (emphasis in original).  It also prohibited ads for tobacco products, alcohol, and political candidates. *Id.*

14.     In response to a media inquiry about the denial of Plaintiff's ad, COLTS' solicitor made a statement to a reporter that "we will not allow our transit vehicles to become a public forum for the debate and discussion of public issues. . . . We don't accept ads promoting any certain religion or religion in general, so we don't want to accept an ad attacking religion."  S. Zaimov, *Atheist Group Pleads Freedom of Speech Violations After Rejected Bus Ad*, Christian Post, Mar. 21, 2012, attached hereto as Exhibit C.

15.     Another solicitor for COLTS told press that COLTS rejected the ad because statements on the NEPA Freethought Society website led COLTS to believe the ad's purpose

was to promote debate.  *See* David Singleton, *Atheist Group Challenges COLTS Ad Ban*, Times
Tribune, Mar. 1, 2012, *available at* http://thetimes-tribune.com/news/atheist-group-challenges-
colts-ad-ban-1.1279600#axzz1r50ThUmL.

16.     Although COLTS' solicitor told a reporter that COLTS had "been very consistent
in not allowing ads that violate the policy," *see* Ex. C,  in fact, prior to rejecting Plaintiff's ad in
February 2012, COLTS had accepted numerous advertisements from religious organizations and
other ads that it later deemed to violate its policy, including ads from:

        a.  St. Mary's Byzantine Catholic Church

        b.  St. Matthew's Lutheran Church;

        c.  Christian Women's Devotional Alliance;

        d.  Hope Church;

        e.  a School Board candidate; and

        f.  Brewer's Outlet, a beer distributor; and

        g.  Old Forge Times, an online blog that contained links to anti-Semitic
            websites, holocaust denial websites, and white supremacist websites.

17.     Moreover, for years prior to NEPA Freethought Society's attempt to advertise, an
electric sign on the front of one COLTS bus had displayed the message "God Bless America."
COLTS only stopped displaying the message after NEPA Freethought Society attempted to
advertise.

18.     Thus, all restrictions on advertising and any concerns regarding religious
advertisements were ignored until NEPA Freethought Society sought to advertise, and the ad

space on COLTS had been historically available to all speakers.  Indeed, for at least a decade

before January 2012, COLTS had never rejected *any* advertisement.

19.     On August 29, 2013, NEPA Freethought Society again submitted an

advertisement for placement on COLTS busses.  The ad stated, "Atheists.  NEPA Freethought

Society.  NEPAfreethought.org."  A true and correct copy of that ad is attached hereto as Exhibit

D.

20.     On September 9, 2013, COLTS rejected the proposed NEPA Freethought Society

ad by letter, stating that:

> COLTS does not accept advertisements that promote the belief that "there
> is no God" or advertisements that promote the belief that "there is a God."
> As stated in COLTS' Advertising Policy, it is COLTS' declared intent <u>not</u>
> to allow its property to become a public forum for the dissemination,
> debate, or discussion of public issues.  The existence or non-existence of a
> supreme deity is a public issue.  COLTS believes that your proposed
> advertisement may offend or alienate a segment of its ridership and thus
> negatively affect its revenue. . . . It is COLTS' goal to provide a safe and
> welcoming environment on its buses for the public at large.  The
> acceptance of ads that promote debate over public issues such as . . . the
> existence of God in a confined space like the inside of a bus detracts from
> this goal.

Letter from G. Wintermantel to J. Vacula (Sept. 9, 2013) (emphasis in original), attached
hereto as Exhibit E.

21.     On September 17, 2013, just 8 days after COLTS rejected the second NEPA

Freethought Society ad, COLTS adopted a new advertising policy (the "2013 Policy"), attached

hereto as Exhibit F.

22.     Among other things, the 2013 Policy stated that:

COLTS will **not** accept advertis[ements]:

[…] [t]hat promote the existence or non-existence of a supreme
deity, deities, being or beings; that address, promote, criticize or
attack a religion or religions, religious beliefs or lack of religious

beliefs; that directly quote or cite scriptures, religious text or texts involving religious beliefs of lack of religious beliefs; or are otherwise religious in nature.

**It is COLTS' declared intent to maintain its advertising space on its property as a nonpublic forum and not to allow its transit vehicles or property to become a public forum for the dissemination, debate, or discussion of public issues or issues that are political or religious in nature.**

COLTS' Advertising Policy is intended to be an objective and enforceable standard for advertising that is consistently applied.

Exhibit F (emphasis in original).

23.     Upon information and belief, COLTS has previously run advertisements and messages that it would not allow under the 2013 Policy (as currently applied) without complaint and without experiencing a resulting loss of ridership.

24.     While the 2013 Policy purports to be objective and consistently applicable, in reality, COLTS has implemented the policy purportedly designed to prevent controversy and "public debate" in a vague, inconsistent, and discretionary manner.

25.     For example, in addition to the rejection of the NEPA Freethought Society ads discussed below, in February 2014, COLTS twice rejected ads submitted by Lutheran Home Care and Hospice, Inc., presumably for containing the word "Lutheran."

26.     On July 21, 2014, NEPA Freethought Society submitted a new ad for consideration under the 2013 Policy.  That ad was nearly identical to those previously rejected, stating "Atheists.  NEPA Freethought Society.  meetup.com/nepafreethoughtsociety."  A true and correct copy of this ad is attached hereto as Exhibit G.

27.     That same day, COLTS rejected the revised ad, stating that the advertising space on its busses is a nonpublic forum, and citing the 2013 Policy's prohibition on ads:

that promote the existence or non-existence of a supreme deity, deities, being or beings; that address, promote, criticize or attack a religion or

- 6 -

religions, religious beliefs or lack of religious beliefs; that directly quote or cite scriptures, religious text or texts involving religious beliefs or lack of religious beliefs; or are otherwise religious in nature.

*See* Letter from G. Wintermantel to J. Vacula (July 21, 2014), attached hereto as Exhibit H.

28.    COLTS also cited its intent, expressed in the 2013 Policy, not to allow its vehicles to become a forum for the "dissemination, debate, or discussion of public issues or issues that are political or religious in nature" as another reason it rejected the NEPA Freethought Society ad, stating that the existence of a supreme deity is a public issue.  *See id.*  COLTS stated that accepting ads "that promote debate over public issues such as . . . the existence of God in a confined space like the inside of a bus detracts from this goal."  *Id.*

29.    On or about July 21, 2014, NEPA Freethought Society submitted a new ad for consideration by COLTS.  This ad stated only "NEPA Freethought Society. meetup.com/nepafreethoughtsociety," and did not contain the word "atheist" or any other reference to the group's purpose or mission.  A true and correct copy of this ad is attached hereto as Exhibit I.  COLTS accepted this ad for publication on July 21, 2014, and it began to run on a bus in October 2014.

30.    Upon information and belief, COLTS has suffered no negative repercussions as a result of running that ad.

31.    Although NEPA Freethought Society has run the ad containing only the group's name and website, and no description of the group's mission, NEPA Freethought Society still wishes to run one of the previously rejected "atheist" ads, to further its mission of bringing like-minded individuals together for social, educational, and philosophical discussion related to their belief in the nonexistence of god.

32.     COLTS' application of its Policy hindered and will continue to hinder NEPA

Freethought Society from achieving its goals by preventing it from running any advertisement on

COLTS busses in 2012 and 2013 and by forcing NEPA Freethought Society to omit the word

"atheist" from any advertisement, rendering the meaning of the advertisement and focus of the

group unclear, thus interfering with the organization's efforts to reach its intended audience.

**COUNT I—42 U.S.C. § 1983**
**VIOLATION OF FIRST AND FOURTEENTH AMENDMENTS**

33.     Plaintiff hereby incorporates each and every allegation in the preceding

paragraphs of this Complaint as if set forth in full herein.

34.     The purpose of the First Amendment is to protect our "profound national

commitment to the principle that debate on public issues should be uninhibited, robust, and wide

open . . . ." *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).

35.     As a government entity, COLTS cannot restrict the content of advertisements on

its buses so as to favor purely commercial speech over speech on matters of public concern.

36.     COLTS, through its longstanding practice of accepting all advertisements for

placement, including advertisements that would violate policies in place at the time they were

published, created in its advertising space a designated public forum.

37.     As such, COLTS may not restrict speech in that forum absent a compelling

government interest.

38.     Even if COLTS had maintained its ad space as a nonpublic forum, any restrictions

on speech in that nonpublic forum would have to be reasonable and viewpoint and content

neutral.

39.     COLTS only began enforcing its policies after NEPA Freethought Society

attempted to advertise with it.  COLTS' decision to begin enforcing its advertising policy as to

all advertisers was motivated by its disagreement with, and distaste for, the viewpoint of one would-be advertiser: NEPA Freethought Society.

40.     COLTS' denial of the NEPA Freethought Society ads and enforcement of its policies was neither viewpoint neutral nor reasonable.

41.     COLTS' policies are so vague as to prevent clear and consistent application and avoid content-based discrimination.

42.     COLTS' refusal under either policy to run the proposed NEPA Freethought Society ad with the word "atheist" on it is an impermissible content- and viewpoint-based restriction on NEPA Freethought Society's rights under the Free Speech Clause of the First Amendment to the United States.

**WHEREFORE**, Plaintiff asks that the Court enter judgment in its favor against Defendant, and award all such relief as is just and proper, including, but not limited to:

a.  A declaration that Defendant's rejection of NEPA Freethought Society's ads as alleged herein violates the Free Speech Clause of the First Amendment to the United States Constitution;

b.  A declaration that Defendant's 2013 Policy violates the First Amendment to the United States Constitution;

c.  An Order permanently enjoining Defendant from enforcing the 2013 Policy;

d.  An award of costs and attorneys' fees;

e.  Any other relief that this Court deems just and proper.

Dated: April 28, 2015

/s/ Mary Catherine Roper
Mary Catherine Roper (Pa. I.D. No. 71107)
Molly Tack-Hooper (Pa. I.D. No. 307828)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 40008
Philadelphia, PA 19106
mroper@aclupa.org
mtack-hooper@aclupa.org
(215) 592-1513 x 116
Fax: (215) 592-1343

Theresa E. Loscalzo (Pa. I.D. No. 52031)*
Stephen J. Shapiro (Pa. I.D. No. 83961)*
Monica Clarke Platt (Pa. I.D. No. 311445)*
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286
(215) 751-2000
Fax: (215) 751-2205

*Application seeking special admission pursuant to
Local Rule 83.8.2.1 will be filed.

Attorneys for Plaintiff,
Northeastern Pennsylvania Freethought Society