IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORTHEASTERN PENNSYLVANIA FREETHOUGHT SOCIETY, | : : : : | CIVIL ACTION  - LAW |
| Plaintiff | : : | JURY TRIAL DEMANDED |
| | : : | ELECTRONICALLY FILED |
| vs. | : : | |
| COUNTY OF LACKAWANNA TRANSIT SYSTEM | : : : | 3:15-CV-00833 |
| Defendant | : | |

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

**A.    The facts alleged in the Complaint can only establish that COLTS' advertising spaces are a nonpublic forum**

Plaintiff agrees that COLTS buses and stops do not constitute a "traditional" public forum.  They argue that the areas constitute a designated public forum.

The Plaintiff's brief and counter statement of facts make it clear that it has been COLTS policy not to "become a public forum for dissemination, debate, or discussion of public issues" and not to accept ads promoting or attacking religion. *See* Plaintiff's Brief at 2.  Plaintiff then makes the conclusory allegation that COLTS accepted several ads from religious organizations, without identifying any details about the alleged advertisements. Id. at 2.  Plaintiff further alleges that ads which violated the policy were also accepted, again without identifying any details

1

about the alleged advertisements. Id. However, they do not allege that any advertisements were accepted after the policy was changes in 2013. This is fatal to Plaintiff's facial and as-applied challenge to the policy.

Plaintiff argues that despite its stated intent, the Court must look to COLTS' conduct. However, Plaintiff has failed to allege sufficient facts to establish that COLTS ever opened the forum to discussion or debate about religious issues, including the existence or non-existence of god at any time. Plaintiff relies primarily on Christ's Bride Ministries and American Freedom Defense Initiative in support of their argument. Both cases were against SEPTA and involved a policy which is distinguishable from the COLTS policy. In both cases, SEPTA did not have an official policy which prohibited political or public issue advertising from appearing on its property. Furthermore, the Court found that SEPTA had accepted a number of public issue advertisements. Freedom Def. Initiative v. SEPTA, 2015 U.S. Dist. LEXIS 29571, 17 (E.D.Pa. 2015). The Court also found that SEPTA's acceptance of political and public issue speech demonstrated a general intent to open the forum for expression. Id. There have been no facts pled in the Complaint to establish that COLTS ever accepted advertisements promoting or attacking religion, or demonstrated an intent to open their advertising space to such expression.

Furthermore, as noted by the Plaintiff, a government entity may close off a space that previously functioned as a designated public forum. *See* Plaintiff's brief at 12, n.2. On September 17, 2013, COLTS adopted a new advertising policy to clarify its intent. Id. at 21-22; Exhibit F to the Complaint. The Policy indicates that "It is COLTS' declared intent to maintain its advertising space on its property as a nonpublic forum and not to allow transit vehicles or property to become a public forum for the dissemination, debate, or discussion of public issues that are political or religious in nature. " Id. Since the adoption of the new policy on September 17, 2013, no ads have been permitted with regard to the exist or non-existence of god. Clearly, since the issuance of the 2013 Policy, the COLTS advertising space has been maintained as a limited public forum.

The facts alleged establish only a non public or limited public forum. A transit authority that allows a wider range of speech than was permitted in Lehman is not automatically stripped of its ability to adopt other viewpoint-neutral criteria for selecting content that reasonably served the agency's overriding commercial purpose. *See* Ridley v. Massachusetts Bay Transportation Authority, 390 F.3d 65 (1st Cir. 2004); *See also*, Seattle Mideast Awareness Campaign v. King County, 781 F.3d 489 (9th Cir. 2015). As here, the advertising program was "part of a government-run commercial enterprise, and the expressive activities the government permit[ted]" under that program were "only incidental to" the

commercial use. *See* Seattle Mideast, supra. "Any such rule would undermine the [Supreme] Court's efforts to 'encourage the government to open its property to some expressive activity in cases where, if faced with an all-or-nothing choice, it might not open the property at all.'" Id. quoting Ark. Educ. Television Comm'n, 523 U.S. at 680)).

The allegations made by Plaintiff fail to support any conclusion other than that the COLTS' advertising space is a non public or limited public forum. "A complaint must do more than allege the plaintiff's entitlement to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 211. Instead, a complaint must "show" this entitlement by alleging sufficient facts. Id. The Complaint fails to meet that burden.

**B.    The restrictions placed upon COLTS advertising space are viewpoint-neutral and reasonable in light of the purpose served by the forum**

The 2013 policy, on its face, is clearly viewpoint neutral as it excludes all advertisements discussing the existence or non-existence of god. Furthermore, there have been no facts alleged to establish that the 2013 policy has not been uniformly applied.

In support of the policies reasonableness, the Defendant discussed Lehman v. City of Shaker Heights, 418 U.S. 298, 41 L. Ed. 2d 770, 94 S. Ct. 2714 (1974), in its brief. That Court addressed a similar issue to the one presented herein.

Plaintiff ignores Lehman in their opposition and offers no contradictory authority.

Furthermore, a desire to avoid potentially disruptive political controversy and to maintain the appearance of neutrality is sufficient justification for excluding speakers from a nonpublic forum. Student Coalition for Peace v. Lower Merion Sch. Dist., 776 F.2d 431 (3d Cir. 1985). Although fears might be unfounded, " the Government need not wait until havoc is wreaked to restrict access to a nonpublic forum. Id. (*citing* Cornelius, 105 S. Ct. at 3453). It is COLTS intent to not allow its property to become a forum for debate on political or religious issues. It is also their goal to "a safe and welcoming environment on its buses for the public at large." *See* Exhibit H and E to the Complaint. Any speech that will foreseeably result in harm to, disruption of, or interference with the transportation system is, by definition, incompatible with the buses' intended purpose. *See* Children of the Rosary v. City of Phoenix, 154 F.3d 972, 979 (9th Cir. 1998). These restrictions are reasonable in the subject fora.

Plaintiff also argues that the asserted grounds are a cover up for viewpoint discrimination. However, Plaintiff's own allegations prove otherwise. Plaintiff admits that the NEPA Freethought society was permitted to advertise the name of their organization and their website. The facts alleged establish that COLTS intention was only to preclude discussion of the existence of god.

The allegations that Churches ran ads prior to the 2013 policy do not establish inconsistent application or opening the forum to the issue of the existence or non-existence of god.  It is not the name of the organization that created the issue.  As noted earlier and in the Complaint, NEPA Freethought Society has also been permitted to run an ad indicating its name.  What was not permitted is the word "Atheist," or any other discussion of the existence of non-existence of god.

Merriam-Websters' online dictionary defines "atheist" as: a person who believes that God does not exist; one who believes that there is no deity.  By the very definition of the word, it raises the issue of the existence of non-existence of god. Plaintiff's argument that the word does not fall under the provisions of the policy ignores the definition of the word.

Plaintiff has not alleged any facts to establish that any other ad has been run with a message regarding the existence or non-existence of god.  Despite this, they argue, without factual support, that the policy was amended in 2013 only to discriminate against the Plaintiff. This conclusion must be supported by facts in the Complaint.

Lastly, the allegation regarding "God Bless America" being run on the electric sign on the front of the bus has no bearing on the present issue.  The electric sign is not part of the advertising space being discussed in this matter and has no bearing on the forum, which is located elsewhere on COLTS property.

The allegations that Churches ran ads prior to the 2013 policy do not establish inconsistent application or opening the forum to the issue of the existence or non-existence of god. It is not the name of the organization that created the issue. As noted earlier and in the Complaint, NEPA Freethought Society has also been permitted to run an ad indicating its name. What was not permitted is the word "Atheist," or any other discussion of the existence of non-existence of god.

Merriam-Websters' online dictionary defines "atheist" as: a person who believes that God does not exist; one who believes that there is no deity. By the very definition of the word, it raises the issue of the existence of non-existence of god. Plaintiff's argument that the word does not fall under the provisions of the policy ignores the definition of the word.

Plaintiff has not alleged any facts to establish that any other ad has been run with a message regarding the existence or non-existence of god. Despite this, they argue, without factual support, that the policy was amended in 2013 only to discriminate against the Plaintiff. This conclusion must be supported by facts in the Complaint.

Lastly, the allegation regarding "God Bless America" being run on the electric sign on the front of the bus has no bearing on the present issue. The electric sign is not part of the advertising space being discussed in this matter and has no bearing on the forum, which is located elsewhere on COLTS property.

Furthermore, Plaintiff alleges that this was run prior to the enactment of the 2013 policy. As such, the allegations regarding the electric sign on the bus are irrelevant to the analysis in this case regarding the constitutionality of the current policy.

The COLTS policy is both content-neutral and reasonable in light of the forum. The allegations of the Complaint fail to establish any facial or as applied First Amendment Violation. As such, Plaintiff's Complaint must be dismissed with prejudice.

                    MARSHALL DENNEHEY
                    WARNER COLEMAN & GOGGIN

By:_____
      William J. McPartland, Esquire
      Attorney I.D. No: PA 94214
      P.O. Box 3118
      Scranton, PA 18505-3118
      (570) 496-4600

## **L.R. 7.8(b) CERTIFICATE**

This brief complies with the Local Rule 7.8(b)  The brief contains 1,505 words.

MARSHALL  DENNEHEY
WARNER COLEMAN & GOGGIN

By:_____
William J. McPartland, Esquire
Attorney ID. No:  PA 94214
P.O. Box 3118
Scranton, PA  18505-3118
(570) 496-4600