**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NORTHEASTERN PENNSYLVANIA FREETHOUGHT SOCIETY,** : : : **CIVIL ACTION NO. 3:15-833** | |
| **Plaintiff** : **(JUDGE MANNION)** | |
| v. : | |
| **COUNTY OF LACKAWANNA TRANSIT SYSTEM,** : : | |
| **Defendant** | |

**MEMORANDUM**

Pending before the court is a motion to dismiss the plaintiff's complaint, (Doc. 1), filed on behalf of defendant County of Lackawanna Transit System ("COLTS"), for failure to state a claim upon which relief may be granted. (Doc. 6). Plaintiff alleges that COLTS' policy regarding advertisements on its buses violated its right to freedom of speech under the First and Fourteenth Amendments. For the reasons that follow, COLTS' motion to dismiss will be **DENIED**.

**I.    RELEVANT BACKGROUND**[1]

Plaintiff, Northeastern Pennsylvania Freethought Society, filed a complaint on April 28, 2015, alleging that COLTS' advertising policies violated

---

[1] The facts alleged in plaintiff's complaint must be accepted as true in considering COLTS's motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 F.App'x 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

1

its First Amendment right to freedom of speech. Plaintiff is an unincorporated association, with its principal office in Wilkes-Barre, Pennsylvania. Plaintiff alleges that its mission is "to facilitate a social, educational, activist, and philosophical coalition of atheists, agnostics, humanists, secularists, and skeptics predicated on support and community that upholds the separation of church and state and promotes critical thinking." COLTS is a public transportation authority operating under the Municipal Authorities Act of 1945, 53 Pa.C.S. §5607, and is headquartered is in Scranton, Pennsylvania. It is alleged that at all relevant times COLTS acted under color of state law.

Plaintiff alleges that COLTS has a longstanding policy of leasing advertising space on its vehicles, both exterior and interior, route schedules, literature, bus shelters, and other property. COLTS has opened its advertising space to the public solely to raise revenue as opposed to further any organizational policy or goal. Plaintiff alleges that COLTS had a practice to exercise its discretion randomly and to favor some viewpoints over others. Plaintiff further alleges that in January 2012 it submitted an advertisement (hereinafter "ad") to COLTS for publication on the exterior of buses stating "Atheist. NEPA Freethought.org." (Doc. 1, Ex. A). In February 2012, COLTS rejected plaintiff's ad since COLTS believed it may spark public debate and attacked religion.

The June 21, 2011 COLTS' Advertising Policy, which was applicable at the time of its initial rejection of plaintiff's ad, prohibited advertising "that is

deemed in COLTS['] sole discretion to be derogatory to any . . . religion," or "that [is] objectionable, controversial or would generally be offensive to COLTS' ridership based solely on the discretion of COLTS." COLTS' policy further stated that "it is COLTS' declared intent not to allow its transit vehicles or property to become a public forum for dissemination, debate, or discussion of public issues." (Doc. 1, Ex. B). COLTS' policy also prohibited ads for tobacco products, alcohol, and political candidates.

Despite the comments by a COLTS' solicitor to a reporter that COLTS had "been very consistent in not allowing ads that violate the policy," (Doc. 1, Ex. C), plaintiff alleges that before COLTS rejected plaintiff's ad in February 2012, it had accepted several advertisements from religious organizations and ads later deemed to violate its policy, including ads from the following: 1. St. Mary's Byzantine Catholic Church; 2. St. Matthew's Lutheran Church; 3. Christian Women's Devotional Alliance; 4. Hope Church; 5. a School Board candidate; 6. Brewer's Outlet, a beer distributor; and 7. Old Forge Times, an online blog containing links to anti-Semitic websites. Additionally, plaintiff alleges that COLTS had an electric sign on the front of one its buses with the message "God Bless America" and only stopped displaying the message after plaintiff submitted its advertisement.

On August 29, 2013, plaintiff submitted another advertisement for placement on COLTS' busses stating, "Atheists. NEPA Freethought Society. NEPAfreethought.org." (Doc. 1, Ex. D). This ad was also rejected by COLTS

3

in a letter dated September 9, 2013, (Doc. 1, Ex. G), which stated:

> COLTS does not accept advertisements that promote the belief that "there is no God" or advertisements that promote the belief that "there is a God." As stated in COLTS' Advertising Policy, it is COLTS' declared intent <u>not</u> to allow its property to become a public forum for the dissemination, debate, or discussion of public issues. The existence or non-existence of a supreme deity is a public issue. COLTS believes that your proposed advertisement may offend or alienate a segment of its ridership and thus negatively affect its revenue. . . . It is COLTS' goal to provide a safe and welcoming environment on its buses for the public at large. The acceptance of ads that promote debate over public issues such as . . . the existence of God in a confined space like the inside of a bus detracts from this goal.

(Emphasis original).

On September 17, 2013, COLTS adopted a new advertising policy. (Doc. 1, Ex. F). The 2013 policy provides that COLTS will not accept advertisements: "that promote the existence or non-existence of a supreme deity, deities, being or beings; that address, promote, criticize or attack a religion or religions, religious beliefs or lack of religious beliefs; that directly quote or cite scriptures, religious text or texts involving religious beliefs or lack of religious beliefs; or are otherwise religious in nature." It also provides that it is COLTS' "intent to maintain its advertising space on its property as a nonpublic forum and not to allow its transit vehicles or property to become a public forum for the dissemination, debate, or discussion of public issues or issues that are political or religious in nature." Plaintiff alleges that COLTS implemented its 2013 policy "purportedly designed to prevent controversy and 'public debate' in a vague, inconsistent, and discretionary manner."

On July 21, 2014, plaintiff submitted a new ad which was nearly identical to its previously rejected ads and, its new ad was rejected under COLTS' 2013 policy. (Doc. 1, Exs. G & H). Also, on July 21, 2014, plaintiff submitted another new ad which merely stated "NEPA Freethought Society. Meetup.com/nepafreethoughtsociety." (Doc. 1, Ex. I). This latest ad was accepted by COLTS for publication on July 21, 2014 and, it began to run on a bus in October 2014.

Plaintiff alleges that all restrictions on advertising and concerns regarding religious advertisements were ignored by COLTS until it tried to advertise, and that the ad space on COLTS' property had been historically available to all speakers. In fact, it is alleged that for at least a decade prior to January 2012, COLTS had never rejected any advertisement. Plaintiff also states that it seeks "to run one of [its] previously rejected 'atheist' ads, to further its mission of bringing like-minded individuals together for social, educational, and philosophical discussion related to their belief in the nonexistence of god." Additionally, plaintiff alleges that "COLTS' application of its Policy hindered and will continue to hinder [plaintiff] from achieving its goals by preventing it from running any advertisement on COLTS busses in 2012 and 2013 and by forcing [plaintiff] to omit the word 'atheist' from any advertisement, rendering the meaning of the advertisement and focus of the group unclear, thus interfering with [plaintiff's] efforts to reach its intended audience."

Count I of the complaint raises claims under the First and Fourteenth Amendments pursuant to 42 U.S.C. §1983 and alleges that COLTS' advertising policy violates plaintiff's free speech right.² Specifically, plaintiff alleges that COLTS' refusal to run its ads with the word "atheist" in them is an impermissible content and viewpoint based restriction on its rights under the free speech clause of the First Amendment. Plaintiff requests both declaratory and injunctive relief to remedy alleged ongoing violations of its constitutional rights.³ Specifically, plaintiff seeks a declaration that COLTS' rejection of its ads violates the First Amendment and a declaration that COLTS' 2013 policy violates the First Amendment. Plaintiff also seeks a permanent injunction prohibiting COLTS from enforcing its 2013 policy. Further, plaintiff requests costs and attorney's fees under 42 U.S.C. §1988.

On June 25, 2015, COLTS filed a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), (Doc. 6), and a brief in support, (Doc. 7). After being granted an extension of time,

---

²Insofar as plaintiff states its claims also fall under the Fourteenth Amendment, the court construes its reference to this Amendment to invoke the incorporation doctrine. *See* Williams v. Papi, 30 F.Supp.3d 306 (M.D.Pa. 2014) ("Under the incorporation doctrine, the [First] Amendment and other provisions of the Bill of Rights apply on their face only to the federal government, and were incorporated against the states later by operation of the Fourteenth Amendment's Due Process Clause.") (citations omitted).

³*See* Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009) (Third Circuit held that to satisfy the standing requirement of Article III, party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future).

plaintiff filed its brief in opposition to the motion on July 27, 2015. (Doc. 10). COLTS filed its reply brief on August 10, 2015. (Doc. 11). The motion is now ripe for the court's review.

The court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343(a), and venue is proper in this district since the defendant is located here and the claims accrued here.

## II.   STANDARDS OF REVIEW

### A. Rule 12(b)(6)

COLTS' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of"

necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g.,* Fletcher-Harlee Corp. v. Pote

8

Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

### B. Section 1983

To state a claim under §1983, a plaintiff must meet two threshold requirements. A plaintiff must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under §1983 fails as a matter of jurisdiction, Polk Cnty. v. Dodson, 454 U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).

Since COLTS is a municipal agency, the standards annunciated in *Monell* apply to it. *See* Malles v. Lehigh County, 639 F.Supp.2d 566 (E.D.Pa. 2009). Under the Supreme Court precedent of Monell v. Dep't. of Soc. Servs.,

9

436 U.S. 658, 694 (1978), a municipality can be held liable under §1983 only if the plaintiff shows that the violation of his federally protected rights resulted from the enforcement of a "policy" or "custom" of the local government. A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." City of St. Louis v. Praprotnik, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

**III. DISCUSSION**

The Supreme Court has long established that a citizen's ability to participate in free debate on matters of public importance is "the core value of the Free Speech Clause of the First Amendment." Pickering v. Bd. of Educ., 391 U.S. 563, 573 (1968); *see also* Connick v. Myers, 461 U.S. 138,

145 (1983); NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982). However, "[t]he government does not have 'to grant access to all who wish to exercise their right to free speech on every type of [public] property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.'" Pittsburgh League of Young Voters Educ. Fund v. Port Authority of Allegheny County, 653 F.3d 290, 295 (3d Cir. 2011) (quoting Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 799–800, 105 S.Ct. 3439 (1985)). "The Supreme Court has developed a forum analysis to determine when the government's interest in limiting the use of its property outweighs the interest of those wishing to use the property as a place for expressive activity." Id. (citing Cornelius, 473 U.S. at 799–800).

The Supreme Court has found that there are three types of fora. Id. (citation omitted). The type of forum determines the level of scrutiny to which the restrictions on speech are subjected. "In traditional public fora, content-based restrictions on speech are subject to strict scrutiny (i.e., the restrictions must be narrowly tailored to serve a compelling governmental interest)". Id. (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948 (1983)). In designated public fora, "content-based restrictions are subject to strict scrutiny." Id. at 296 (citing Perry, 460 U.S. at 45). The third type of fora consists of "public property that 'is not by tradition or designation a forum for public communication' [and this] constitutes a nonpublic forum." Id. (citing Perry, 460 U.S. at 46). "Access to a nonpublic

11

forum can be restricted so long as the restrictions are reasonable and viewpoint neutral." Id. (citing Cornelius, 473 U.S. at 800).

COLTS argues that plaintiff failed to allege facts to support a First Amendment claim under §1983. COLTS moves to dismiss the complaint with prejudice for failure to state a claim on two grounds, namely, that plaintiff's claims fail since COLTS advertising space should be classified as a nonpublic forum and, its advertising policies are viewpoint neutral and reasonable regulations of private advertising in a nonpublic forum. The court finds that a determination as to each ground requires a complete factual record which does not yet exist at this early stage of the case and that COLTS' contentions are premature. Each ground shall now be addressed.

First, COLTS states that the advertising space on its buses and bus stops do not constitute a "traditional" public forum and, as a nonpublic forum, access to its property can be restricted so long as the restrictions are reasonable and viewpoint neutral. COLTS contends that plaintiff's allegations merely show that it intended to create a nonpublic forum or limited public forum, open only to certain kinds of expression and that its polices contained viewpoint neutral criteria for selecting content of ads on its property. COLTS states that the allegations demonstrate that its intention was not to allow ads promoting or attacking religion and that plaintiff was allowed to advertise the name of its organization and its website address.

Second, COLTS states that its restrictions placed upon the advertising

space on its property are viewpoint neutral and reasonable in light of the purpose served by the forum, i.e., to raise revenue, and that its policy specifically stated that its intent was not to make its property "a public forum for the dissemination, debate, or discussion of public issues or issues that are political or religious in nature." As such, COLTS states that its policy was not a viewpoint restriction on speech. COLTS contends that as in Lehman v. City of Shaker Heights, 418 U.S. 298, 303-04, 94 S. Ct. 2714 (1974), it "consciously has limited access to its transit system advertising space in order to minimize chances of abuse, the appearance of favoritism, and the risk of imposing upon a captive audience."

Third, COLTS states that the restrictions in its polices are reasonable. COLTS states that the purpose of its property, namely, buses, bus stops and literature, is to provide safe and reliable public transportation as well as a safe and welcoming environment on its buses for the public, and that it is not its intent to allow its property to become a forum for debate on political or religious issues.

Plaintiff counters that COLTS' advertising space on its busses, literature, and bus stops should be classified as designated public fora. Designated public fora "consist of public property 'that has not traditionally been regarded as a public forum' but that the government has intentionally opened up for use by the public as a place for expressive activity." Pittsburgh League of Young Voters Educ., 653 F.3d at 296 (quoting Pleasant Grove City

13

v. Summum, 555 U.S. 460, 129 S.Ct. 1125, 1132 (2009)). As mentioned, content-based speech restrictions in a designated public forum are subject to strict scrutiny. Id. Plaintiff alleges that COLTS rejected its advertisements because of their content and viewpoint and, it facially challenges COLTS' polices as being in violation of the First and Fourteenth Amendments. Plaintiff contends that COLTS' advertising space should be classified as a designated public forum and that its policies should be subjected to a strict scrutiny analysis. COLTS argues that its advertising space constitutes a nonpublic forum and that its polices are reasonable and viewpoint neutral.

A determination as to whether COLTS' advertising space is a designated public forum requires the court to engage in a fact-specific analysis of the forum itself. Christ's Bride Ministries, Inc. v. Se. Pa. Transp. Auth., 148 F.3d 242, 248-52 (3d Cir. 1998) (To determine whether the government agency clearly and deliberately opened its advertising space to the public, courts must examine not only the agency's policies, but also its practices in using the space, and the nature of the space and its compatibility with expressive activity). As such, COLTS' written policies alone are not sufficient to determine whether COLTS has created a designated public forum on its advertising space. In light of the type of inquiry required to determine whether the space at issue constitutes a designated public forum or a nonpublic forum and since the factual record is not yet developed, the court finds that it is premature to try and classify the proper forum at this stage of

the case. Thus, since the appropriate forum classification cannot yet be determined and such determination requires a fully developed record, the court is unable to determine whether the strict scrutiny analysis applies and whether COLTS' policies are in violation of the First Amendment. Therefore, the court will deny COLTS' motion regarding plaintiff's First Amendment claims.

Moreover, plaintiff has alleged viewpoint discrimination by COLTS. Plaintiff has alleged sufficient facts to support a plausible claim that COLTS was rejecting its ads because it disagreed with the underlying ideology of atheism which plaintiff's speech expressed. "Viewpoint discrimination occurs when the government 'targets not subject matter, but particular views taken by speakers on a subject.'" Pittsburgh League of Young Voters Educ., 653 F.3d at 296 (quoting Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829, 115 S.Ct. 2510 (1995)).

Plaintiff has alleged that COLTS allowed several religious groups to place ads on its properties as well as other types of ads which were in violation of its policy. Plaintiff alleges that COLTS unevenly enforced its policies and it abused its discretion by favoring certain groups, such as groups that were religious in nature, over others. No doubt that if a governmental body like COLTS allows speech on a certain subject regardless of the forum, it must accept all viewpoints on the subject, including those that it disfavors or finds unpopular. *See* Pittsburgh League of Young Voters Educ.,

653 F.3d at 296. Plaintiff has essentially alleged that COLTS did not fairly enforce its policy to preclude all advertisements, regardless of their viewpoint concerning the existence or nonexistence of a supreme deity and did in fact permit advertisements promoting religion. As stated, plaintiff also alleges that prior to its attempt to advertise, COLTS had an electric sign on the front of one of its buses stating "God Bless America." Further, plaintiff alleged that up until the time that it sought to advertise, COLTS accepted every ad that was presented to it, including ads that violated its own policies. Thus, plaintiff alleges that COLTS has permitted the display of religious advertisements recognizing certain churches and groups. As such, plaintiff maintains that COLTS' policies were not enforced in a content neutral manner and that COLTS was not consistent in its application of its policies. Plaintiff also points out that COLTS' actual practices show a different intent than the intent reflected in its written policies. All of these issues require a developed factual record.

While CLOTS states that "[t]he allegations of plaintiff's Complaint fail to establish that COLTS ever accepted an advertisement promoting or attacking any religion", and that plaintiff's complaint fails to identify specific details, on a motion to dismiss, the court accepts as true the complaint's allegations that COLTS did allow ads promoting religion without evidentiary proof. COLTS may be able to present this argument at a later time after discovery is concluded. Thus, the court will deny COLTS' motion regarding plaintiff's

viewpoint discrimination claim, since plaintiff has alleged that COLTS rejected its ads because of hostility towards its ad's underlying message and what its group and members believed.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that, at this stage of the litigation, the plaintiff's complaint includes factual allegations sufficient to state plausible First Amendment claims against COLTS. Thus, COLTS' motion to dismiss, (Doc. 6), will be **DENIED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 27, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0833-01.wpd