## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTHEASTERN PENNSYLVANIA FREETHOUGHT SOCIETY, | Civil Action No. 3:15-CV-00833-MEM |
| Plaintiff, | (Judge Mannion) |
| v. | |
| COUNTY OF LACKAWANNA TRANSIT SYSTEM, | |
| Defendant. | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

SCHNADER HARRISON SEGAL & LEWIS LLP
Theresa E. Loscalzo (Pa. Id. 52031)
Stephen J. Shapiro (Pa. Id. 83961)
Benjamin D. Wanger (Pa. Id. 209317)
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
tloscalzo@schnader.com
sshapiro@schnader.com
bwanger@schnader.com
 (215) 751-2000
Fax: (215) 751-2205

AMERICAN CIVIL LIBERTIES
UNION OF PENNSYLVANIA
Mary Catherine Roper (Pa. Id. 71107)
Molly Tack-Hooper (Pa. Id. 307828)
P.O. Box 60173
Philadelphia, PA 19102
mtack-hooper@aclupa.org
mroper@aclupa.org
(215) 592-1513 x 113
Fax: (215) 592-1343

*Attorneys for Plaintiff Northeastern Pennsylvania Freethought Society*

June 26, 2017

Date Conference was held by counsel, pursuant to Local Rule 16.3(b):
June 6, 2017.

A.      **Brief Statement as to Federal Court Jurisdiction**

This action is brought pursuant to 42 U.S.C. § 1983 and the First and
Fourteenth Amendments to the United States Constitution.  The Court has subject
matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C.
§ 1343.  The Court has personal jurisdiction over the Defendant, the County of
Lackawanna Transit System ("COLTS"), which is located in the Middle District.

The parties agree that there is no entitlement to a jury in this case, and
that the trial will be a bench trial.

B.      **Summary of Facts and Contentions as to Liability**

1.      **Summary of Facts**

Plaintiff Northeastern Pennsylvania Freethought Society ("NEPA
Freethought Society") wishes to place an advertisement on the outside of buses
that simply says "Atheists." along with the organization's name and website
address.  COLTS has rejected three separate attempts by the NEPA Freethought
Society to place such an advertisement because COLTS believes the word
"atheists" could spark debate.

For years, COLTS placed no restrictions on the types of
advertisements it would display on its buses.  It ran many advertisements for
churches and religiously affiliated organizations and events; a beer distributor; an

anti-smoking PSA; a candidate for political office; newspapers; and a controversial Internet blog. None of these advertisements led to disruption aboard a COLTS bus or prompted a single complaint from a COLTS patron or any loss of ridership.

COLTS never rejected a proposed advertisement until May 2011, when it rejected a religious organization's proposed advertisement forecasting the coming "Judgment Day." COLTS was concerned that the religious message of the advertisement could be controversial and provoke debates or arguments aboard COLTS buses, and that, if COLTS opened the door to religious messages, atheist groups might also try to advertise and turn the buses into a "place for debate." In June 2011, COLTS first adopted a restrictive advertising policy. Among other prohibitions, the 2011 Policy banned advertisements "that are objectionable, controversial, or would generally be offensive to COLTS' ridership based solely on the discretion of COLTS." In 2013, COLTS revised the policy to, among other things, explicitly prohibit advertisements that in any way referred to atheism or religion.

In order to recruit potential members, in January 2012, the NEPA Freethought Society submitted a proposed advertisement to COLTS containing the word "Atheists" in large font above the NEPA Freethought Society's website URL. COLTS rejected it. The NEPA Freethought Society submitted variants on this advertisement in August 2013 and July 2014, and COLTS rejected the

advertisements each time, before finally, in July 2014, accepting a version of the advertisement that omitted the word "Atheists" and simply stated "NEPA Freethought Society" and the organization's website address.

## 2. Contentions as to Liability

COLTS is liable for violations of the NEPA Freethought Society's First Amendment rights.

First, no matter how the court characterizes the "forum" for speech at issue in this case, COLTS' advertising policy violates the NEPA Freethought Society's First Amendment rights because the policy constitutes censorship aimed at an illegitimate government interest: the suppression of debate or discussion of public issues. This unlawful goal cannot justify any government restriction on speech.

Second, no matter how the court characterizes the "forum" for speech at issue in this case, COLTS' advertising policy violates the NEPA Freethought Society's First Amendment rights because it discriminates on its face based on viewpoint by favoring the speech of non-religious and non-atheist speakers over nearly identical speech by religious or atheist speakers, and by favoring "non-controversial" viewpoints over "controversial" viewpoints.

Third, even if COLTS' advertising spaces were characterized as a nonpublic forum, COLTS' policy violates the NEPA Freethought Society's First

Amendment rights because COLTS' restrictions on speech are not a "reasonable" attempt to preserve the forum for its intended purpose of generating revenue.

Fourth, COLTS' policy violates the NEPA Freethought Society's First Amendment rights because the vagueness of the policy's terms invites subjective, arbitrary, and discriminatory enforcement of the policy—particularly against unpopular speakers.

Fifth, COLTS' policy violates the NEPA Freethought Society's First Amendment rights because, by soliciting advertisements from the general public and accepting virtually every proposed advertisement for years, COLTS created a designated public forum. Because the policy's content-based restrictions on speech are not narrowly tailored to serve a compelling government interest, COLTS' policy fails the strict scrutiny that applies in a designated public forum.

C. **Statement of Undisputed Facts as Agreed to by Counsel**

1. The NEPA Freethought Society is an unincorporated association based in Wilkes-Barre, Pennsylvania.

2. The NEPA Freethought Society is an organization of atheists, agnostics, secularists, and skeptics.

3. The NEPA Freethought Society engages in social, educational, and activist activities, including building a supportive community for atheists,

agnostics, secularists, and skeptics; promoting critical thinking; and upholding the separation of church and state.

4.      Justin Vacula is the co-organizer and a spokesperson for the NEPA Freethought Society.

5.      COLTS runs the transit system in Scranton, Pennsylvania.

6.      Robert Fiume has served as COLTS' Executive Director since June 2008.

7.      As Executive Director, Mr. Fiume is responsible for overseeing the whole transportation system.

8.      Mr. Fiume delegated responsibility for deciding whether to accept a proposed advertisement to the Advertising Manager, Jim Smith, and later to the Communications Director, Gretchen Wintermantel.

9.      Gretchen Wintermantel has served as COLTS' Communications Director since April 2009.

10.     As COLTS' Communications Director, Ms. Wintermantel is responsible for interpreting COLTS' advertising policies in order to decide whether or not to accept particular advertisement proposals.

11.     At times, Ms. Wintermantel consults with COLTS' management and COLTS' solicitor to determine whether to accept or reject proposed advertisements.

12.     Ms. Wintermantel and Mr. Fiume each possess final policymaking authority with respect to COLTS' enforcement of its advertising policies.

13.     COLTS has leased advertising space on the inside and outside of its vehicles since at least 1993.

14.     Traditionally, COLTS has opened its advertising space to the public for the purpose of raising revenue, and not to further any other organizational policy or goal.

15.     Traditionally, advertising revenue has comprised less than two percent of COLTS' yearly revenue.

16.     In May 2011, Jim Smith, who at the time, served as COLTS' Advertising Manager, received a phone call from a local man who wanted to run an advertisement that said "Judgment Day is Coming in May."

17.     Mr. Smith and Ms. Wintermantel were alarmed by the proposed "Judgment Day" advertisement because it "seem[ed] religious." Ms. Wintermantel reviewed the website affiliated with the advertiser's campaign and confirmed that it was, in fact, religious.

18.     Mr. Smith and Ms. Wintermantel, along with Mr. Fiume, decided that the Judgment Day advertisement "could be controversial" because it was "religious." They agreed to reject it because "[a]ds that are religious in nature

can cause heated debates and heated arguments on either side," and COLTS did not want debates or arguments inside the buses.

19.     Accordingly, although COLTS had never before informed a potential advertiser that it would not run their advertisement, COLTS informed the potential customer that COLTS would not accept the "Judgment Day" advertisement.

20.     COLTS based its denial of the "Judgment Day" advertisement on the fact that COLTS "felt it was pro-religion" and did not want religion being discussed on the buses because that might "cause heated debates and heated arguments."

21.     Ms. Wintermantel drafted COLTS' first formal advertising policy, which was approved by the COLTS Board of Directors on June 21, 2011. *See* Ex. 51.

22.     The 2011 Policy was not designed to increase COLTS' ridership nor was it prompted by any revenue-related goals or concerns.

23.     The 2011 Policy had no effect on COLTS' ridership.

24.     The goal of COLTS' advertising policy "was specifically to prevent debate inside of COLTS' buses . . .  and had nothing to do with debate outside the buses."

25.     On January 30, 2012, Justin Vacula sent an email to Mr. Smith on behalf of the NEPA Freethought Society seeking to run an advertisement on a COLTS bus containing an image of clouds and the word "Atheists" in large font above the URL address of the NEPA Freethought Society's webpage (WWW.NEPAFREETHOUGHT.ORG) in smaller font.  *See* Ex. 54.  Upon receipt, Mr. Smith showed the email to Ms. Wintermantel.

26.     COLTS rejected the NEPA Freethought Society's proposed advertisement based on its belief that the word "Atheists" would likely cause passengers to engage in debates about atheism aboard COLTS' buses.

27.     COLTS believed that the words "Atheist," "Agnostics," "Catholic," "Jews," "Muslims," or "Hindu"—or any word referring to a religion or lack of religion—"could spark debate on a bus" and "be a controversial issue" regardless of the context in which the word was used.

28.     A few days after COLTS received the NEPA Freethought Society's proposed advertisement, Mr. Smith telephoned Mr. Vacula to inform him that COLTS would not run the proposed advertisement.

29.     On August 29, 2013, the NEPA Freethought Society again submitted an advertisement for placement on COLTS buses.  The proposed advertisement stated "Atheists. NEPA Freethought Society. NEPAfreethought.org."  *See* Ex. 56.

30.     COLTS again rejected the NEPA Freethought Society's advertisement proposal based on COLTS' belief that the word "atheist" would cause debate on buses and based on COLTS' concern that the advertisement would offend or alienate its elderly bus riders.

31.     On September 9, 2013, Ms. Wintermantel, writing on behalf of COLTS, sent a letter to Mr. Vacula stating that COLTS would not display the NEPA Freethought Society's proposed advertisement.  *See* Ex. 57.

32.     Aside from the NEPA Freethought Society's proposed advertisements, COLTS only rejected one other advertisement proposal under the 2011 Policy.

33.     In May 2012, COLTS rejected an advertisement proposal for the "Wilkes-Barre Scranton Night Out."  *See* Ex. 5.

34.     COLTS rejected the proposed advertisement for "Wilkes-Barre Scranton Night Out" because the website had links to bars.

35.     Ms. Wintermantel, who made the decision to reject the advertisement, testified that COLTS would probably not reject the proposed advertisement if it were submitted again.

36.     On September 17, 2013—eight days after it sent a letter to Justin Vacula, denying the NEPA Freethought Society's second advertisement proposal—the COLTS Board of Directors enacted a new policy (the "2013

Policy"), drafted by COLTS' attorneys, to "clarify" the 2011 Policy as COLTS understood it and to more clearly "set forth the types of advertisements it will and will not accept[.]" *See* Ex. 52.

37. Currently, the 2013 Policy is still in effect.

38. The 2013 Policy states:

**It is COLTS' declared intent to maintain its advertising space on its property as a nonpublic forum and not to allow its transit vehicles or property to become a public forum for the dissemination, debate, or discussion of public issues or issues that are political or religious in nature**.

COLTS' corporate designee explained that this provision means that "the intent is to not allow people to start arguing over issues."

39. The 2013 Policy was enacted because COLTS wants to prevent debates or argument on its buses.

40. In creating the 2013 Policy, COLTS specifically sought to preclude issues that are political or religious in nature because COLTS believes that politics and religion are topics that people feel strongly about.

41. COLTS prohibited advertisements for firearms because COLTS believes that people have strong opinions about guns.

42. COLTS believes that debates aboard buses could be dangerous and render the buses potentially unsafe.

43.     On July 21, 2014, the NEPA Freethought Society submitted a new "Atheists" advertisement proposal to COLTS that stated:

Atheists.
NEPA Freethought Society
meetup.com/nepafreethoughtsociety

*See* Exs. 58 and 59.

44.     On June 21, 2014, COLTS sent Mr. Vacula a letter denying the NEPA Freethought Society's advertisement proposal.  *See* Ex. 58.

45.     COLTS did not deny the NEPA Freethought Society's proposed "Atheists" advertisement on the grounds that it viewed the advertisement as attacking a religion, religious beliefs or lack of religious beliefs.

46.     COLTS' denial of the NEPA Freethought Society's proposed advertisement was based on the fact that the proposed advertisement addressed the non-existence of a deity and that the word "Atheists" on the advertisement would promote debate over a public issue, and thus violated COLTS' advertising policy.

47.     On July 21, 2014, the same day that COLTS rejected the NEPA Freethought Society's third advertisement proposal, Mr. Vacula submitted an additional advertisement proposal.  *See* Ex. 59.

48.     The NEPA Freethought Society's fourth advertisement proposal was identical to the advertisement proposal rejected earlier that day, except that it did not include the word "Atheists."  Rather, it only contained the following text:

NEPA Freethought Society
meetup.com/nepafreethoughtsociety

49.     On July 22, 2014, Ms. Wintermantel sent an email to Mr. Vacula agreeing to run the NEPA Freethought Society's proposed advertisement.

50.     COLTS agreed to run the NEPA Freethought Society's fourth advertisement proposal "because the word 'atheist' had been taken out and on its face it did not violate our policy."

51.     The NEPA Freethought Society's fourth advertisement proposal was displayed on the outside of a COLTS bus in October or November of 2014.[1]

---

[1] The parties are discussing adding additional facts to the Statement of Undisputed Facts as Agreed to by Counsel.  Although the parties have not yet reached agreement on those facts, the parties expect to reach agreement soon.

D.   **Description of Damages**

The NEPA Freethought Society is not seeking monetary damages.

The NEPA Freethought Society has asserted claims for declaratory and injunctive

relief only, as well as reasonable attorneys' fees and costs.

E.   **Names and Addresses of Witnesses**

The NEPA Freethought Society intends to call COLTS' designees,

Gretchen Wintermantel and Robert Fiume, as on cross-examination.  COLTS'

corporate address is 800 North South Road, Scranton, PA 18504.

The NEPA Freethought Society also intends to call Justin Vacula to

testify.  Mr. Vacula's address is 936 North 22nd Street, Allentown, PA 18104.

The NEPA Freethought Society reserves the right to call any

witnesses listed on COLTS' witness list.

F.   **Summary of Testimony of Expert Witnesses**

The NEPA Freethought Society does not intend to introduce the

testimony of any expert witnesses.

G.   **Special Comments about Pleadings and Discovery**

None.

H.   **Summary of Legal Issues Involved and Legal Authority Relied On**

COLTS' advertising policy violates the First Amendment for several

independent reasons.

First, no matter how the court characterizes the "forum" for speech at issue in this case, COLTS' advertising policy violates the NEPA Freethought Society's First Amendment rights because the policy constitutes censorship aimed at an illegitimate government interest: the suppression of debate or discussion of public issues. This unlawful goal cannot justify any government restriction on speech. *E.g.*, *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118 (1991) (holding that there is no legitimate state interest in protecting the sensibilities of recipients of speech or avoiding disagreement); *Cohen v. California*, 403 U.S. 15, 24–25 (1971) (First Amendment protects "open debate," which requires tolerating "verbal tumult" and "discord").

Second, no matter how the court characterizes the "forum" for speech at issue in this case, COLTS' advertising policy violates the NEPA Freethought Society's First Amendment rights because the policy discriminates on its face based on viewpoint by favoring the speech of non-religious and non-atheist speakers over nearly identical speech by religious or atheist speakers, and by favoring "non-controversial" viewpoints over "controversial" viewpoints. *See*, *e.g.*, *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny County*, 653 F.3d 290, 297–98 (3d Cir. 2011) (fact that advertising policy treats similarly situated advertisements differently is evidence of viewpoint discrimination); *Child Evangelism Fellowship v. Stafford Twp. Sch. Dist.*, 386 F.3d

514, 527–28 (3d Cir. 2004) (holding that excluding speech on the entire category or subject of religion, or excluding speakers because they are controversial, both constitute viewpoint discrimination); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 392–93 (1993) (holding that where government allowed nonpublic forum to be used for discussion of certain subjects, it could not deny access to those wishing to discuss the subjects from a religious standpoint).

Third, even if COLTS' advertising spaces were characterized as a nonpublic forum, COLTS' policy violates the NEPA Freethought Society's First Amendment rights because COLTS' restrictions on speech are not a "reasonable" attempt to preserve the forum for its intended purpose of generating revenue. Indeed, the restrictions in the 2013 Policy have nothing to do with generating revenue. Content-based restrictions are permitted in a nonpublic forum only if they are designed to confine the forum to the limited and legitimate purposes for which it was created. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 280 (3d Cir. 2004). In other words, the "reasonableness" of a restriction on speech in a nonpublic forum must be determined in light of the purpose served by the forum. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001). And as the Supreme Court has made clear, courts should be skeptical of any claim that censorship is justified by the goal of avoiding controversy; this argument is frequently pretext for viewpoint discrimination. *NAACP v. City of Philadelphia*,

834 F.3d 435, 446 (3d Cir. 2016) (citing *Cornelius v. NAACP Legal Defense &*
*Educ. Fund, Inc.*, 473 U.S. 788, 812 (1985); *Metromedia, Inc. v. City of San Diego*,
453 U.S. 490, 510 (1981)).

Fourth, COLTS' policy violates the NEPA Freethought Society's First
Amendment rights because the vagueness of the policy's terms invites subjective,
arbitrary, and discriminatory enforcement of the policy—particularly against
unpopular speakers. *See*, *e.g.*, *Child Evangelism Fellowship of N.J., Inc. v.
Stafford Twp. Sch. Dist.*, 233 F. Supp. 2d 647, 666 (D.N.J. 2002), *aff'd*, 386 F.3d
514 (3d Cir. 2004).

Fifth, COLTS' policy violates the NEPA Freethought Society's First
Amendment rights because, notwithstanding the statement in COLTS' policy that
COLTS did not intend to create a public forum, COLTS created a designated
public forum by soliciting advertisements from the general public and accepting
virtually every proposed advertisement for years. *See Christ's Bride Ministries,
Inc. v. SEPTA*, 148 F.3d 242 (3d Cir. 2004) (finding advertising space within
SEPTA stations to be designated public forum; *Hopper v. City of Pasco*, 241 F.3d
1067, 1074–81 (9th Cir. 2001) (finding city hall advertising space to be designated
public forum); *United Food & Commercial Workers Union, Local 1099 v. Sw.
Ohio Reg'l Transit Auth.*, 163 F.3d 341, 355 (6th Cir. 1998) (finding city bus
advertising space to be designated public forum); *Gregoir v. Centennial Sch. Dist.*,

907 F.2d 1366, 1374 (noting that government's "own statement of its intent . . . does not resolve the public forum question"). Because the policy's content-based restrictions on speech are not narrowly tailored to serve a compelling government interest, COLTS' policy fails the strict scrutiny that applies in a designated public forum. *See Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 653 F.3d 290, 295 (3d Cir. 2011). A restriction on speech is not "narrowly tailored" if it (1) is not necessary to achieve the government's claimed interest, *see Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 609–10 (1982); if it (2) is over- or under-inclusive, *see First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 793–95 (1978); or if it (3) is not the least restrictive means of achieving this interest, *see Sable Communications v. FCC*, 492 U.S. 115, 126–31 (1989).

## I. **Stipulations Desired**

The NEPA Freethought Society intends to call COLTS' designees as on cross-examination in its case-in-chief. The NEPA Freethought Society proposes that COLTS conduct its entire direct examination of these witnesses while they are on the witness stand during the NEPA Freethought Society's case-in-chief so that each witness only needs to be called to testify once.

## J. **Estimated Number of Trial Days**

The NEPA Freethought Society estimates that trial will last 1-2 days.

K.    **Other Pertinent Matters**

    None.

L.    **Schedule of Exhibits**

    See attached form.

M.    **Special Verdict Questions**

    Not applicable.

N.    **Certificate as Required Under Local Rule 30.10**

    The attorneys for both sides have conferred in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessarily for the trier of fact from any deposition testimony to be used at trial.

O.    **Requests for Findings of Both Fact and Law**

    See attached.

Dated:  June 26, 2017        Respectfully Submitted,

                        */s/ Benjamin D. Wanger*
                        Stephen J. Shapiro (Pa. Id. No. 83961)
                        Theresa E. Loscalzo (Pa. Id. No. 52031)
                        Benjamin D. Wanger (Pa. Id. 209317)
                        SCHNADER HARRISON SEGAL &
                        LEWIS LLP
                        1600 Market Street, Suite 3600
                        Philadelphia, PA 19103-7286
                        bwanger@schnader.com
                        (215) 751-2000
                        Fax: (215) 751-2205

                        Molly Tack-Hooper (Pa. Id. No. 307828)
                        Mary Catherine Roper (Pa. Id. No. 71107)

AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
mtack-hooper@aclupa.org
mroper@aclupa.org
(215) 592-1513 x 113
Fax: (215) 592-1343

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing PLAINTIFF'S PRETRIAL MEMORANDUM was filed electronically and served on all counsel of record via the ECF system of the United States District Court for the Middle District of Pennsylvania.

Dated:  June 26, 2017                                   */s/ Benjamin D. Wanger*
                                                               Benjamin D. Wanger