## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NORTHEASTERN PENNSYLVANIA
FREETHOUGHT SOCIETY,

          Plaintiff,

    v.

COUNTY OF LACKAWANNA
TRANSIT SYSTEM,

          Defendant.

Civil Action No. 3:15-CV-00833-MEM

(Judge Mannion)

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988

Plaintiff Northeastern Pennsylvania Freethought Society, as the prevailing party in this civil rights litigation, submits this brief in support of its motion for an award of attorney's fees pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d).

## RELEVANT PROCEDURAL HISTORY
## AND FACTUAL BACKGROUND

The Northeastern Pennsylvania Freethought Society (the "Freethought Society") brought this First Amendment lawsuit for declaratory and injunctive relief, challenging the advertising policies of Defendant County of Lackawanna Transit System ("COLTS") on their face and as applied to the Freethought

Society's efforts to advertise on COLTS's buses.

On April 28, 2015, Plaintiff filed a Complaint in this Court, requesting that the Court declare that COLTS's rejection of the Freethought Society's advertisements and COLTS's 2013 advertising policy violated the Freethought Society's rights under the First Amendment to the United States Constitution; permanently enjoin COLTS from enforcing its 2013 advertising policy; and award the Freethought Society's attorney's fees and costs.  (ECF No. 1.)

COLTS filed a motion to dismiss the Complaint for failure to state a claim, which the Court denied in January 2016.  (ECF Nos. 6, 20, 21.)  After the Court denied COLTS's motion to dismiss, the parties engaged in approximately six months of discovery.

Following discovery, the parties filed cross-motions for summary judgment in July 2016.  (ECF Nos. 30, 32.)  The Freethought Society submitted two briefs and a statement of facts in support of its motion, and it submitted two briefs and an answer to COLTS's motion and statement of facts.

The Court denied each party's motion for summary judgment in April 2017 and set the case for trial in November 2017.  (ECF Nos. 53, 54, 55, 74.)

The Freethought Society spent substantial time preparing for trial, attending a pretrial conference, answering two motions in limine, and preparing a pretrial memorandum and proposed findings of fact.

The trial lasted a full day.  The parties called four witnesses, introduced 94 exhibits into evidence, and presented opening and closing argument.

At trial, the Court ordered the parties to file supplemental post-trial findings of fact and conclusions of law and response briefs, which the parties prepared and submitted.  (ECF Nos. 81–84.)  After trial, Plaintiff submitted a notice of supplemental authority.

The Court ordered entry of judgment in favor of COLTS in July 2018.  (ECF Nos. 86, 87, 88.)

The Freethought Society timely appealed the Court's order and judgment to the United States Court of Appeals for the Third Judicial Circuit in August 2018. (ECF No. 89.)

The Freethought Society prepared and filed an opening appellate brief of 12,896 words, a reply brief of 6,454 words, and a Joint Appendix of more than 1,650 pages, and coordinated *amicus* briefs signed by twenty organizations.

The Third Circuit listed the case for oral argument.  The Freethought Society spent considerable time preparing for that oral argument.  The Third Circuit heard oral argument on June 12, 2019.

After argument, the Freethought Society submitted a Rule 28(j) letter notifying the court of supplemental authority.

On September 17, 2019, the Third Circuit issued a 32-page precedential

opinion reversing the July 9, 2018 order and judgment.  COLTS moved for rehearing, which the Third Circuit denied by order dated October 30, 2019.

On November 5, 2019, COLTS requested a stay of issuance of the mandate to permit it to file a petition for a writ of *certiorari*.  The Third Circuit granted COLTS's stay request on November 8, 2019.

The Freethought Society and COLTS spent several weeks in December 2019 and January 2020 attempting to negotiate a resolution of the Freethought Society's entitlement to attorney's fees.  The parties were unable to reach agreement.

On January 29, 2020, COLTS advised the Third Circuit that it would not, after all, be seeking a writ of *certiorari*.  Accordingly, on January 31, 2020, the Third Circuit lifted the stay and issued its judgment and mandate in the case.

The judgment and mandate instructed this Court to enter judgment for Appellant, grant declaratory relief, and issue a permanent injunction in accordance with the Third Circuit's opinion.

This Court received the Third Circuit's judgment and mandate on January 31, 2020, and entered it on the docket the same day.  (ECF No. 92.)

This Court vacated its July 9, 2018 judgment and entered judgment in favor of the Freethought Society on February 14, 2020, pursuant to the Third Circuit's mandate and judgment.  (ECF No. 96.)

## QUESTION PRESENTED

Should the Court award the Freethought Society, as the prevailing party in this civil rights litigation, its reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988?

## ARGUMENT

## I.     PLAINTIFF IS A "PREVAILING PARTY" UNDER 42 U.S.C. § 1988

42 U.S.C. § 1988 authorizes the award of costs and reasonable attorney's fees to "prevailing parties" in lawsuits brought under the Civil Rights Act. *Truesdell v. Philadelphia Housing Auth.*, 290 F.3d 159, 163 (3d Cir. 2002).  Even though 1988(b) "refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances."  *County of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001); *see also People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008) (same).

The Supreme Court has given a "generous formulation to the term 'prevailing party.'"  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (explaining that a prevailing party is "one who has been awarded some relief by the court") (citations and quotations omitted).  Prevailing parties are those that "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *accord P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 855 (3d Cir. 2006).

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Truesdell*, 290 F.3d at 163 (citations omitted). Such a material alteration occurs when a plaintiff obtains either an "enforceable judgment . . . or comparable relief through a consent decree or settlement . . . [that] directly benefit[s] him at the time of the judgment or settlement." *Id*. In other words, there must exist a "court-ordered change in the legal relationship between the plaintiff and the defendant." *Id*. at 164 (quotation and alterations omitted).

In light of the Third Circuit's "court-ordered change" in the parties' relationship, the question turns to whether the Plaintiff "succeed[ed] on any significant issue in [the] litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433; *accord P.N.*, 442 F.3d at 855. This "prevailing party inquiry does not turn on the magnitude of the relief obtained." *P.N.*, 442 F.3d at 855.

In this case, Plaintiff is a prevailing party because it achieved its desired results, including a declaration that Defendant COLTS violated the Freethought Society's First Amendment rights when it refused to accept the Freethought Society's advertisements and a permanent injunction prohibiting COLTS from

enforcing its 2013 advertising policy.  These victories confer prevailing party status on the Freethought Society.  *See P.N.*, 442 F.3d at 855.

Once a plaintiff demonstrates that he is a prevailing party, the Court must determine a reasonable and appropriate award of fees.  *Hensley*, 461 U.S. at 433.  The Supreme Court explained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

*Id*. at 435 (citation omitted); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.") (quotations and citations omitted).

Because the Freethought Society obtained results completely vindicating its rights in a complex and novel constitutional case, it is entitled to a "fully compensatory fee."

## II.   THE LODESTAR CALCULATION

Under 42 U.S.C. § 1988, once a plaintiff is deemed a prevailing party the plaintiff is entitled to a reasonable fee.  The "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably

7

expended on the litigation times a reasonable hourly rate." *Student Pub. Interest Research Grp. v. AT&T Bell Lab.*, 842 F.2d 1436, 1441 (3d Cir. 1988) ("SPIRG") (quoting *Blum v. Stenson*, 466 U.S. 886, 888 (1984)).  The product of this equation is known as the "lodestar."  *Id.*  Only after determining the lodestar may the court "adjust the fee for a variety of reasons," including the "results obtained."  *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

The three public service attorneys who represented the Plaintiff have each prepared a declaration, time sheet, and resume, all of which are attached hereto as exhibits and incorporated herein by reference.  *See* Exhibits 1 (Walczak), 2 (Tack-Hooper), and 3 (Hauss).

In addition, Theresa E. Loscalzo, co-managing partner of Schnader Harrison Segal & Lewis LLP, has prepared a declaration concerning the time spent by the Schnader lawyers and paralegals who worked on the case.[1]  The Schnader lawyers' time sheets and *curricula vitae* are attached to the Loscalzo Declaration.  The rates

---

[1] As described in the Loscalzo Declaration, which is attached as Exhibit 4, Schnader has closely reviewed the time billed on this matter and, to ensure its fees are reasonable, has not included time billed by associates who did not have primary roles in litigating the case and has not included paralegal time.  As further described in the Loscalzo Declaration, Schnader has reduced the hours billed by Ms. Loscalzo by 50% and by Mr. Wanger by 10%.

charged by the Schnader lawyers are consistent with the rates charged by attorneys in the Middle District who handle complex federal court litigation.

### A.   Reasonable Hourly Rate

The "starting point in determining a reasonable hourly rate is the attorneys' usual billing rate . . . ." *Windall*, 51 F.3d at 1185.  For public-service attorneys who do not have paying clients, however, the Third Circuit has adopted the "community market rate rule" for assessing the reasonable hourly fee.  *See SPIRG*, 842 F.2d at 1450.

The community-market-rate rule is important to "further the congressional policy of attracting competent counsel to public interest litigation," which promotes the interest in "enhanc[ing] enforcement of important civil rights, consumer protection and environmental policies" and in "better deter[ring] illegal behavior."  *Id*. at 1449, 1450.  The community-market-rate rule requires courts "to assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the private business sphere."  *Id*. at 1447.

By passing the fee-shifting provisions in 42 U.S.C. § 1988, Congress intended that civil rights lawyers should be compensated at the same market rate as lawyers handling other types of complex federal litigation: "It is intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of equally complex Federal litigation, such as anti-trust cases[,] and not

be reduced because the rights involved may be nonpecuniary in nature." *Hensley*, 461 U.S. at 430 n.4 (citations omitted) (observing the "appropriate standards" are set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

As the Fifth Circuit recognized in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), "[a]n attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience." 488 F.2d at 719.

The ACLU and its state affiliates are public-interest law firms that do not bill clients. Accordingly, the ACLU-PA attorneys Walczak and Tack-Hooper and ACLU attorney Brian Hauss are within the scope of the "community market rate" rule.

Based on billing rates of the Middle District's top federal-court practitioners, as summarized by Attorneys Thomas B. Schmidt, III, and David Fine in their declarations attached as Exhibits 5 and 6, Mr. Walczak bills at $600 per hour, which is at or lower than comparably skilled lawyers handling complex federal litigation in the Middle District. *See* Exhibit 1. Ms. Tack-Hooper bills at $350 per hour, and Mr. Hauss bills at $317.50, also reasonable rates for lawyers with their experience and educational backgrounds. *See* Exhibits 2 & 3.

The Third Circuit has directed that "[w]hen attorney's fees are awarded, the

current market rate must be used.  The current market rate is the *rate at the time of the fee petition*, not the rate at the time the services were performed." *Lanni v. New Jersey*, 359 F.3d 146, 149–50 (3d Cir. 2001) (emphasis added) (internal citations omitted).  Accordingly, the current market rates for attorneys of similar skill, experience, and reputation to Mr. Walczak, Ms. Tack-Hooper, and Mr. Hauss should be applied to all their billing entries in this case.

For the same reason, Schnader has discounted its Philadelphia-based lawyers' rates that it currently charges its clients for the time of the lawyers who worked on this case to reflect current prevailing Middle District rates for similar complex federal litigation.[2]

In sum, the rates charged by the lawyers are reasonable and reflect the prevailing rates for lawyers with comparable skill and standing in the relevant legal community.

## B.     Reasonable Hours

Descriptions of Plaintiff's attorneys' work and the time spent on tasks were contemporaneously recorded on time sheets that are maintained and kept in the

---

[2] Significantly, neither Schnader, the ACLU, or ACLU-PA seeks Philadelphia rates for the time spent on the Third Circuit appeal, which was argued in Philadelphia. Instead, they are applying prevailing Middle District rates to all time spent on the case, including the appeal.

regular course of business.

All of the attorneys have exercised billing discretion and have not charged for hours that would not, in private practice, ordinarily be billed to a client, or which are duplicative or redundant.  The lawyers also did not bill for time spent responding to media inquiries.  As mentioned above in footnote 1, Schnader did not include time billed by associate attorneys who did not play primary roles in litigating this lawsuit.

The total time spent litigating the case , along with the litigation costs and expenses incurred in this Court,[3] are $9,181.20 in costs and expenses, and 1707.8 hours totaling $633,337.80 in attorney time at prevailing rates.  A summary of this lodestar calculation is attached as Exhibit 7.  Details and supporting documentation for the expenses and hours of work incurred can be found in the declarations and time sheets attached to this brief as exhibits.

The lodestar for the proceedings in this case, including expenses, is thus $642,519.00.

Given the results achieved by Plaintiff in this case, the quantity of work required to litigate the dispute, including through trial and appeal to the Third

---

[3] The Third Circuit directed that costs of appeal should not be taxed to either party. *See* January 31, 2020 Mandate & Judgment.  (ECF No. 92.)

Circuit, and the complex constitutional issues involved, more than 1707 hours of attorney work worth $633,337.80 and $9,121.20 in costs and expenses to achieve those results in this case is reasonable.

## CONCLUSION

WHEREFORE, Plaintiff Northeastern Pennsylvania Freethought Society respectfully requests that this Court grant its motion and award $633,337.80 in fees and $9,121.20 in costs and expenses attributable to the successful prosecution of this case.

Respectfully Submitted,

/s/ Stephen J. Shapiro
Theresa E. Loscalzo (Pa. Id. No. 52031)
Stephen J. Shapiro (Pa. Id. No. 83961)
SCHNADER HARRISON SEGAL &
LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
sshapiro@schnader.com
(215) 751-2000

Mary Catherine Roper (Pa. Id. No. 71107)
AMERICAN CIVIL LIBERTIES UNION
OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
mroper@aclupa.org
(215) 592-1513