# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NORTHEASTERN PENNSYLVANIA FREETHOUGHT SOCIETY, | |
| Plaintiff, | Civil Action No. 3:15-CV-00833-MEM |
| v. | (Judge Mannion) |
| COUNTY OF LACKAWANNA TRANSIT SYSTEM, | |
| Defendant. | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988

Theresa E. Loscalzo (Pa. ID No. 52031)
Stephen J. Shapiro (Pa. ID No. 83961)
SCHNADER HARRISON
  SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
sshapiro@schnader.com
(215) 751-2000

Witold J. Walczak (Pa. ID No. 62976)
AMERICAN CIVIL LIBERTIES UNION
  OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
vwalczak@aclupa.org
(412) 681-8707

*Counsel for Plaintiff*

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................... ii

I. Argument ............................................................................2

    A.   Freethought Society's Motion for Fees and Costs Is Well-Supported
and Reasonable, Not "Outrageously Excessive".........................................2

    B.   COLTS's Misrepresentations Do Not Warrant Reduction of the
Requested Fee.........................................................................7

    C.   COLTS Incorrectly Claims the Requested Fee Should Be Reduced
Because the Freethought Society Won Based on a Single Issue ..............15

    D.   Freethought Society's Hourly Rates Are Reasonable and Reflect
What Attorneys of Similar Skill Charge for Legal Work in Scranton......17

    E.   Freethought Society's Motion for Fees Is Timely .......................................20

II. Conclusion.........................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*,
877 F.3d 136 (3d Cir. 2017) ...........................................................17

*Carroll v. Clifford Township*,
625 F. App'x 43 (3d Cir. 2015) ..........................................................4

*Clemens v. New York Central Mutual Fire Insurance Co.*,
264 F. Supp. 3d 618 (M.D. Pa. 2017), *aff'd*, 903 F.3d 396
(3d Cir. 2018).................................................................*passim*

*County of Morris v. Nationalist Movement*,
273 F.3d 527 (3d Cir. 2001) ...............................................................2

*Gillespie v. Dring*,
No. 3:15-CV-00950, 2019 U.S. Dist. LEXIS 180019
(M.D. Pa. Oct. 17, 2019)...............................................................15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...............................................................2, 17

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
426 F.3d 694 (3d Cir. 2005) .............................................................17

*J.S. v. Blue Mt. Sch. Dist.*,
No. 3:07cv585, 2014 U.S. Dist. LEXIS 44478
(M.D. Pa. Mar. 31, 2014)...............................................20, 22, 23

*Lanni v. New Jersey*,
359 F.3d 146 (3d Cir. 2001) .............................................................19

*Lozano v. City of Hazleton*,
No. 3:06cv1586, 2015 U.S. Dist. LEXIS 139308
(M.D. Pa. Oct. 6, 2015).............................................................8, 20

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)...............................................................23

*Northeastern Pa. Freethought Society v. COLTS*,
    938 F.3d 424 (3d Cir. 2019) ..............................................................................16

*Paulus v. Cordero*,
    No. 3:12-CV-986, 2013 U.S. Dist. LEXIS 20198
    (M.D. Pa. Jan. 31, 2013) ..................................................................................18

*People Against Police Violence v. Pittsburgh*,
    520 F.3d 226 (3d Cir. 2008) ...............................................................................2

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990) ............................................................................16

*Smith v. Philadelphia Hous. Auth.*,
    107 F.3d 223 (3d Cir. 1997) ..............................................................................20

*Toshiba Am. Med. Sys. Inc. v. Vally Open*
    *MRI & Diagnostic Ctr., Inc*., No. 3:14-1419,
    2017 U.S. Dist. LEXIS 63324 (M.D. Pa. Apr. 26, 2017)...................................15

*Young v. Smith*,
    905 F.3d 229 (3d Cir. 2018) .....................................................................4, 5, 6

**Statutes and Rules**

42 U.S.C. § 1988 ...................................................................................1, 4, 23

Federal Rule of Civil Procedure Rule 11 ..................................................................4

Federal Rule of Civil Procedure Rule 54(d) ..........................................................22

Local Rule of Civil Procedure 7.1(c)......................................................................10

Local Rule of Appellate Procedure 108.1...............................................................22

**Other Authorities**

Tania Lombrozo, *This Could Have Been Shorter*, NPR (Feb. 3, 2014),
    https://www.npr.org/sections/13.7/2014/02/03/270680304/this-
    could-have-been-shorter ...................................................................................11

In this case, Plaintiff Northeastern Pennsylvania Freethought Society secured a precedential appellate decision on a complex question of First Amendment law.  It took the Freethought Society considerable effort over the course of the five years since filing the complaint, including defeating a motion to dismiss, summary judgment proceedings, a trial, and an appeal to the Third Circuit, to obtain this result and to vindicate its rights.

Now, in response to the Freethought Society's motion for fees and costs reasonably incurred in this effort, it is COLTS, not the Freethought Society, that is overreaching, calling for the complete denial of fees.  COLTS raises numerous issues and nitpicks the Freethought Society's submission, but COLTS relies on inapposite decisions and downplays the constitutionally significant result the Freethought Society obtained in this impact litigation, none of which should dissuade the Court from exercising its authority to award the Freethought Society its reasonable fees and costs.

For the following reasons, in addition to those in the Freethought Society's opening submission, the Court should grant the Freethought Society's motion and award it its reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

## I.    ARGUMENT

### A.    Freethought Society's Motion for Fees and Costs Is Well-Supported and Reasonable, Not "Outrageously Excessive."

It is a well-settled principle of federal civil rights law that a successful litigant should be awarded attorney's fees unless there are special circumstances warranting denial of fees. *People Against Police Violence v. Pittsburgh*, 520 F.3d 226, 232 (3d Cir. 2008); *County of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001). COLTS does not dispute this. Here, COLTS has not identified—and cannot identify—any special circumstances involved in this litigation that courts have recognized as warranting a denial of fees. Accordingly, because the Freethought Society obtained excellent results, the Court should grant a fully compensatory fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

However, COLTS incorrectly contends that Plaintiff's fee request for five years of hard-fought litigation is so "outrageously excessive" that the Court should deny it altogether. COLTS Br. 3–5, 21–32. Attempting to support this claim—itself outrageous—COLTS strains to bring Plaintiff's fee request within the scope of this Court's decision in *Clemens v. New York Central Mutual Fire Insurance Co.*, 264 F. Supp. 3d 618 (M.D. Pa. 2017), *aff'd*, 903 F.3d 396 (3d Cir. 2018). However, *Clemens* involved egregious attorney misconduct and has no conceivable bearing on this case.

In *Clemens*, the parties litigated a straightforward insurance claim and bad faith claim, trying the matter to a jury.  264 F. Supp. 3d at 626.  Plaintiff recovered $25,000 in settlement of the underlying contract claim and a punitive damages award of $100,000 under Pennsylvania's bad faith statute.  *Id*.  Plaintiff then submitted a fee request for more than $1,000,000 in fees and interest.  *Id*.

This Court had no difficulty identifying the outrageous nature of Clemens's fee request.  The defects were numerous and manifest:

- Clemens's counsel included more than 2,583 hours in the fee request, the equivalent of working eight hours a day on the case for almost an entire year.

- Clemens's counsel did not contemporaneously record time and presented virtually inscrutable *post hoc* documentation of the time worked—compiled by a single attorney who estimated what all of the lawyers and paralegals did—that did not inform the Court of the actual work done.

- The petition included grossly inflated requests for clerical activities at attorney rates.

- At trial, the Court admonished Clemens's counsel at least 75 times for improper conduct and lack of familiarity with procedures and evidence rules, which unduly drew out the trial and, in one instance, required the Court to warn counsel that the U.S. Marshals might have to become involved.

- Because Clemens's written submission was so vague and poorly assembled, the Court granted a hearing so Clemens would have an opportunity to present evidence in support of the request; but Clemens presented only one witness and no additional documentary evidence, wasting the Court's time and wholly failing to support the fee request.

There is nothing remotely comparable in this case to the misconduct and failure of proof involved in *Clemens*.  Here, counsel worked diligently and advocated zealously through trial and appeal for more than five years.  They kept track of their work on contemporaneously recorded timesheets in sufficient detail for the Court to assess the reasonableness of the time they spent on case-related tasks.  And they successfully handled an impact litigation case involving a complex question of evolving constitutional law, not a "straightforward" insurance claim.

In the 42 U.S.C. § 1988 context, the Third Circuit has held, as it did in *Clemens*, that a court may deny a fee petition only when the petitioner's conduct and petition are incredibly outrageous.  *See Young v. Smith*, 905 F.3d 229, 235–36 (3d Cir. 2018).  In *Young*, the court affirmed the district court's denial of fees to a party whose attorney is known in this district for her erratic behavior and excessive fee petitions.  *See, e.g., id*. at 330–31 (describing the "thick body" of Third Circuit law arising from the lawyer's "outlandish" fee petitions, including a prior petition that this Court denied *in toto* as explained in *Carroll v. Clifford Township*, 625 F. App'x 43 (3d Cir. 2015)).  The lawyer in *Young* submitted fraudulent documentation in support of a fee petition, violating Rule 11.  905 F.3d at 234–35.  Further, she sought to recover fees for portions of the litigation that were necessary only as a result of her own vexatious conduct, resulting in the imposition of

sanctions.  *Id*. at 233.  The court explained that her fee petition was outrageous on its face:

> The [District] Court noted that the fee petition was
> single-spaced, in either 6 or 8-point font that consumed
> forty-four pages and included hundreds of inappropriate,
> unethical entries that would likely be illegal if billed to a
> client.
>
> A brief sampling of the content of the fee petition
> illustrates why the Court was so exasperated.  Pollick
> requested attorney's fees for the first trial even though
> the verdict was vacated because of her own misconduct.
> She requested attorney's fees for the second trial even
> though it resulted in a complete defense verdict and her
> clients were therefore not the prevailing party.  A further
> example of the egregiousness of her conduct is the fact
> that, even though the settlement limited recovery to fees
> and costs arising only from her claims against the
> teacher, Pollick requested fees and costs for the second
> trial, which only involved the school district.

*Id*. at 232–33.  And, as the district court explained, her conduct at the hearing on her fee petition was similarly perplexing and outrageous: "I was transported to a universe devoid of legal principles and fundamental notions of relevance.  Ms. Pollick's strange and obstreperous conduct at the hearing also flaunted any semblance of propriety and decorum in federal court[.]"  *Id*. at 232 n.8.

Again, COLTS has not identified anything here even remotely like the outrageous fee requests and accompanying misconduct in *Clemens* and *Young* that would warrant wholesale denial of Plaintiff's request for fees.  Frankly, the only outrageous matter before the Court is COLTS's contention that the Freethought

Society's counsel should be subject to the same sanction as counsel for the *Clemens* and *Young* plaintiffs.

All COLTS points to is the fact that the Freethought Society's lawyers billed 1,707.8 hours on the case during the more than five years the parties litigated, including a motion to dismiss, summary judgment, a trial, and an appeal to the Third Circuit.  COLTS Br. 4.  That amounts to approximately 6.5 hours per week of the approximately 260 weeks that the parties were litigating the complex constitutional questions arising from COLTS's unconstitutional advertising policy.  And 1,058.68 of those hours, representing about $396,000 of the requested fee, were for the litigation before this Court.  That is a far cry from the outrageous claim in *Clemens*, where counsel sought more than a million dollars in fees and interest for more than 2,500 hours of work in the trial court—the equivalent of working 8 hours a day for 323 days—on a straightforward insurance issue.  264 F. Supp. 3d at 627 n.6.

Likewise, Plaintiff's counsel's staffing of the appeal and the time spent on it were reasonable.  The parties were litigating a significant and unsettled issue of First Amendment law—a matter of first impression in the Third Circuit—within a constantly changing legal landscape.  The importance of the case as an impact matter warranted the significant efforts the Freethought Society's counsel put into it, including ongoing legal research and strategy discussions about the numerous

overlapping lines of First Amendment doctrine implicated by COLTS' advertising policy, what arguments to emphasize in the trial court and on appeal, and how to present them most effectively.  Those efforts paid off when Plaintiff prevailed.

Further, the requested rates do not shock the conscience.  They are all lower than the standard rates for the Freethought Society's attorneys, who are based in Philadelphia and Pittsburgh.  And Plaintiff supported the requested rates with declarations from lawyers with knowledge of the forum and prevailing rates in complex civil rights litigation.  *See* Freethought Society Br. 9–11, Exs. 5 & 6 (declarations from Thomas B. Schmidt, III and David Fine).

Simply put, there is nothing about the zealous advocacy Freethought Society's counsel provided in compliance with its ethical obligations that shocks the conscience.  COLTS's argument that the Court should deny Plaintiff's petition *in toto* because it is purportedly "outrageously excessive" is meritless.

## B.   COLTS's Misrepresentations Do Not Warrant Reduction of the Requested Fee.

After arguing that Plaintiff does not deserve any fee award, COLTS next tries to anchor the Court to COLTS's own hours as a measure of reasonableness. COLTS argues, in essence, that the Freethought Society could and should have spent less time on this case because COLTS spent less time on the case.  But the time spent on the litigation by the losing party is not the measure of reasonableness, and COLTS has not cited any authority to suggest otherwise.

Indeed, this Court has rejected this very notion before. *Lozano v. City of Hazleton*, No. 3:06cv1586, 2015 U.S. Dist. LEXIS 139308, at *12–22 (M.D. Pa. Oct. 6, 2015) (rejecting defendants' argument that plaintiffs' fee request should be slashed in half because plaintiffs spent nearly twice as many hours on the litigation as defendants, and agreeing that comparing the plaintiffs' hours to a government defendant's hours "is simply not a valid quantitative measure to determine a reasonable number of hours").

This case, at both the trial and appellate levels, involved numerous legal theories pertinent to unsettled and complex constitutional questions. As explained in Ms. Tack-Hooper's declaration, this case involved complicated and nuanced matters of evolving First Amendment law and several lines of authority deriving from Supreme Court decisions, as well as decisions countrywide concerning public transit advertising and governmental policies prohibiting religious content. *See* Pl.'s Ex. 2 at ¶¶ 6–7. It was what Mr. Schmidt describes as "impact litigation" because it involved "legal principles in circumstances of substantial public controversy or developing public policy." Pl.'s Ex. 5 at ¶¶ 3, 5. And the result was significant beyond its importance to the Freethought Society. Two Supreme Court Justices cited the Third Circuit opinion in this case with approval in dissenting from the denial of certiorari in a similar case, *Archdiocese v. WMATA*, out of the D.C. Circuit. *See* Order Denying Certiorari, *Archdiocese v. WMATA*,

No. 18-1455 (Apr. 6, 2020) (Gorsuch, J., dissenting), *available at*

https://www.supremecourt.gov/orders/courtorders/040620zor_h4d8.pdf (arguing

that reversal is warranted "for the reasons admirably explained by Judge Griffith in

his dissent below *and by Judge Hardiman in an opinion for the Third Circuit*"

(emphasis added) (citing *Northeastern Pa. Freethought Society v. COLTS*, 938

F.3d 424, 435–37 (3d Cir. 2019))).

Apart from pointing to COLTS's own hours, COLTS's contention that the

Court should reduce the Freethought Society's fee request for duplicative or

redundant work relies on distortions of time entries and unfounded allegations of

excessive billing.  A few examples will show that the time entries are appropriate.

Regarding discovery, for example, COLTS complains that Plaintiff seeks to

recover for time spent preparing for and conducting depositions where two of the

four lawyers with such time entries did not attend the depositions.  COLTS Br. 9.

However, the 0.8 hours Ms. Loscalzo (a partner) billed involved discussing the

deposition preparation and strategy with Mr. Wanger (an associate who took the

depositions) is perfectly reasonable.

Likewise, COLTS's characterization of Ms. Platt's time entries in October

2015 preparing for depositions that did not ultimately happen until months later

(COLTS Br. 9) takes those records out of the context of the larger discovery

timeline in the case, which involved several extensions of deadlines.  Although the

depositions did not ultimately take place until March 2016, discovery was well underway in October.  *See, e.g.*, ECF No. 13 ¶ 4.1 (Sept. 21, 2015 Joint Case Management Plan noting that Plaintiff had already served requests for production on COLTS); ECF No. 16 (Scheduling Order setting a deadline for fact discovery of February 15, 2016); ECF No. 18 (Jan. 18, 2016 joint motion to extend discovery deadlines).

In the same vein, COLTS criticizes Ms. Tack-Hooper for time entries related to trial preparation in July 2017, when the trial did not occur until November (*see* COLTS Br. 9–10), but fails to mention that trial was originally scheduled for July 31, 2017.  *See* ECF No. 55.

Similarly, COLTS contends that Mr. Wanger spent several hours preparing a one-paragraph motion.  COLTS Br. 9.  But a fair reading of the time entries is that Mr. Wanger was working on the motion package, including the brief.  In the Eastern District of Pennsylvania, where Mr. Wanger's office was located, a motion includes the required memorandum of law.  *See* E.D. Pa. Local Rule 7.1(c) (requiring a brief accompany every contested motion).  Thus, as a matter of general practice, he would typically refer to work on a brief as work on the motion it accompanied.  There is no basis for COLTS's uncharitable and overly literal reading of the time records.

COLTS implies that it was improper for Ms. Loscalzo to spend 16.8 hours preparing for trial and on post-trial briefing when she did not attend trial. COLTS Br. 10 & Chart (ECF No. 105-4 at 2). However, there is nothing improper about a partner providing guidance to an associate (here Mr. Wanger) or reviewing motions in limine or post-trial briefs. *See* Ex. A to Pl.'s Ex. 4 (ECF No. 100-4 at 25).

COLTS also takes issue with the time Plaintiff's counsel spent developing the complaint. It is reasonable for a party to conduct factual and legal research related to the legal theories that would support the claim, and to edit the document accordingly, before filing the complaint. Indeed, Rule 11 requires such pre-filing investigation. Fed R. Civ. P. 11(b)(2)–(3). That the complaint Plaintiff filed was a one-count, 42-paragraph document does not speak to the complexity of the legal theories reflected in it or the work required to draft it. And it also does not reflect time taken to make the complaint a succinct document as opposed to a sprawling one.[1]

---

[1] It takes time and effort to produce concise documents. As French philosopher and mathematician Blaise Pascal wrote, "I would have written a shorter letter, but I did not have the time." Tania Lombrozo, *This Could Have Been Shorter*, NPR (Feb. 3, 2014), https://www.npr.org/sections/13.7/2014/02/03/270680304/this-could-have-been-shorter.

Likewise, the time Plaintiff spent opposing the motion to dismiss is reasonable.  As with any potentially dispositive motion, the stakes were significant. And as with the complaint, associate-level attorneys (*i.e.*, Ms. Platt and Ms. Tack-Hooper) did the lion's share of the work researching the issues raised by COLTS and drafting the opposition papers.  Senior attorneys then spent a much smaller number of hours reviewing and providing input on the draft.  COLTS Br. 8 (noting Ms. Platt and Ms. Tack-Hooper spent about 46 hours researching, drafting, and editing the opposition brief and partners Loscalzo and Shapiro collectively spent five hours—a little more than two hours each—reviewing and editing the brief). The resulting brief thoroughly addressed the several arguments COLTS made for dismissal, and the time Plaintiff spent on the response paid off: the Court denied COLTS's motion.  *See* ECF Nos. 20, 21.

COLTS also conflates discrete time entries to make it appear that Plaintiff spent unreasonable amounts of time on general tasks.  For example, regarding Mr. Shapiro's time spent preparing for and attending trial, COLTS lumps it all together as "almost 30 hours, to prepare for and attend trial."  COLTS Br. 10.  Breaking that time down, however, shows that it is reasonable, consisting of about 8 hours of travel time (to attend the pretrial conference and the trial), 3.5 hours of trial strategy development with Mr. Wanger, 4 hours working on pre-trial statements and opposition to motions in limine, and about 11 hours assisting in preparing

witnesses for trial and attending the trial, during which he provided real-time

suggestions on matters of strategy and improving the record at recesses.  *See* Ex. A

to Pl.'s Ex. 4 (ECF No. 100-4 at 22–23).  Similarly, COLTS takes issue with some

of Ms. Tack-Hooper's records reflecting time spent on "trial prep" (*see* COLTS'

Br. 9–10) despite the existence of other records that make clear Ms. Tack-Hooper

was responsible for a wide range of very specific trial-related tasks, including trial

stipulations, finalizing exhibits, preparing for direct and cross-examination of three

witnesses (Mr. Vacula, Mr. Fiume, and Mr. Hinton), and drafting the pretrial

memo and proposed findings of fact and conclusions of law.  *See* Ex. D to Tack-

Hooper Decl. 4–6.  There is nothing improper about consolidated time entries, and

Plaintiff's submission offers more than enough specificity to allow the Court to

discern the nature and subject of the work reflected in the time records.

Similarly, considering the complex and significant nature of issues involved

in the case, Plaintiff's staffing and time spent on the appeal are reasonable.

Although Plaintiff's request for fees incurred on appeal includes time recorded by

seven lawyers, not all of those lawyers spent equal amounts of time on the appeal.[2]

---

[2] In this respect, several other lawyers performed discrete, *ad hoc* tasks on the case during the more than six years it has spent in the courts.  Plaintiff does not seek reimbursement for their time, including Judge Lewis's time spent preparing for and holding a moot court to workshop Plaintiff's appellate argument.  The fact that other lawyers may have performed spot tasks as "pinch hitters" during the

*…Continued*

As with the litigation before this Court, Ms. Tack-Hooper, Mr. Wanger, and his successor, Ms. Horton, handled the bulk of the work, and senior attorneys (*i.e.*, Mr. Walczak, Mr. Shapiro, and Ms. Loscalzo) and subject matter experts (Mr. Hauss) billed far fewer hours as they provided guidance, reviewed draft briefs, and addressed strategic considerations.

In the final analysis, there is nothing unusual, excessive, or duplicative in these time entries or in the time entries concerning other tasks Plaintiff had to complete to vindicate its First Amendment rights. There is nothing excessive about the staffing of the case given the division of labor and the fact that there was a succession of associate-level attorneys (*i.e.*, Ms. Platt, Mr. Wanger, and Ms. Horton) who worked on the matter.

In addition, there is no merit to COLTS's claim that the time entries are too vague to determine whether they are appropriate. COLTS Br. 10–11, 25 n.8. In this regard, COLTS does not identify which time entries it contends are impermissibly vague. Instead, it states, in conclusory fashion, that "Plaintiff's fee petition lacks specificity for a large amount of entries throughout the life of the case." *Id*. 11.

---

*Continued from previous page*
pendency of the case is hardly unusual, contrary to COLTS's suggestion. *See* COLTS Br. 24 n.6.

COLTS's blanket claim of vagueness fails to meet its burden, as a party

challenging a fee request, to provide Plaintiff with the detail necessary to defend its

fee petition:

> The opposing party must make specific objections to the
> hours expended.  Specific objections must . . . identify
> the type of work being challenged; and specifically state
> the adverse parties['] grounds for contending that the
> hours claimed in that area are unreasonable.

*Gillespie v. Dring*, No. 3:15-CV-00950, 2019 U.S. Dist. LEXIS 180019, at *39

(M.D. Pa. Oct. 17, 2019) (internal quotations omitted).  Indeed, this Court

explained that the "adverse party 'cannot merely allege in general terms that time

spent was excessive.'" *Toshiba Am. Med. Sys. Inc. v. Vally Open MRI &*

*Diagnostic Ctr., Inc*., No. 3:14-1419, 2017 U.S. Dist. LEXIS 63324, at *21 (M.D.

Pa. Apr. 26, 2017) (Mannion, J.) (quoting *Borrell v. Bloomsburg Univ*., 207 F.

Supp. 3d 454, 512 (M.D. Pa. 2016)).

COLTS fails to show Plaintiffs and the Court what it contends to be an

impermissibly vague time entry regarding either the trial or appellate proceedings.

Accordingly, the Court should not entertain this unspecific objection.

### C. COLTS Incorrectly Claims the Requested Fee Should Be Reduced Because the Freethought Society Won Based on a Single Issue.

COLTS claims the time Plaintiff spent on appellate briefing was excessive

because the Third Circuit decided the appeal based on only one of the issues raised.

COLTS Br. 29.  But this claim is meritless for several reasons.

15

To begin, although the Third Circuit needed only one reason to find COLTS'
advertisement policy unconstitutional in order to rule for the Plaintiff, the court
actually found COLTS's policy both viewpoint discriminatory *and* unreasonable.
*See Northeastern Pa. Freethought Soc'y v. Cty. of Lackawanna Transit Sys.*, 938
F.3d 424, 441 (3d Cir. 2019) ("COLTS' reasonableness argument is threadbare.
And it reaches its breaking point when we come to the religious ban. . . . Even if
that weren't viewpoint discrimination, it is unreasonable to so broadly single out
for exclusion speech entitled to special protection.").

And even if the court had rejected or declined to rule on some of Plaintiff's
alternative arguments, this would not provide any basis for reducing Plaintiff's fee
award.  While a court may reduce an award for time a prevailing party spent on
issues on which it did not succeed, those issues must be "distinct in all respects"
from claims on which the party did succeed.  *See, e.g.*, *Rode v. Dellarciprete*, 892
F.2d 1177 (3d Cir. 1990).  That is not the case here.  The Freethought Society won
on the sole First Amendment claim it brought against COLTS, and all of its
arguments on appeal pertained to that claim.  As the Supreme Court explained,

> [T]he fee award should not be reduced simply because
> the plaintiff failed to prevail on every contention raised in
> the lawsuit.  Litigants in good faith may raise alternative
> legal grounds for a desired outcome, and *the court's*
> *rejection of or failure to reach certain grounds is not a*
> *sufficient reason for reducing a fee.  The result is what*
> *matters.*

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (emphasis added).

Because the Freethought Society obtained its desired result on its sole First Amendment claim, the Third Circuit's decision not to address every alternative argument in support thereof would not be a basis for reducing Plaintiff's fee request.

COLTS's argument also ignores basic realities of appellate advocacy. A party that appeals and that fails to raise an issue or argument is deemed to have waived or forfeited that matter for purposes of appeal. *See, e.g.*, *Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 145–46 (3d Cir. 2017). COLTS's approach would force an appellant to forecast the specific argument or theory an appellate court will accept when that appellant prepares its appellate brief and address only that issue or have time spent covering other bases rejected as "unreasonable." It would interfere with counsel's ethical obligation to represent clients with zeal and to preserve issues for appeal, possibly creating conflicts of interest where the lawyers would shy away from raising meritorious issues because they might not recover fees on all of those theories.

**D.**     **Freethought Society's Hourly Rates Are Reasonable and Reflect What Attorneys of Similar Skill Charge for Legal Work in Scranton.**

Rates are reasonable if they reflect the prevailing rates that lawyers of similar skill, experience, and reputation charge to do work in the relevant

17

community.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708

(3d Cir. 2005).  Here, that community is the Middle District, where COLTS is

located and the case was tried.

Plaintiff submitted evidence of the reasonableness of its counsels' rates for

litigation in the Middle District in the form of declarations of its counsel and of

two independent attorneys, Thomas B. Schmidt, III and David Fine.  Those

declarations establish that highly skilled attorneys in the Middle District

comparable to Plaintiff's counsel, whether in a branch office of a Philadelphia or

Pittsburgh firm or a principal office, bill uniform hourly rates throughout the

Middle District regardless of the location of the courthouse where they are

litigating.  *See* Pl.'s Ex. 5 at ¶¶ 4–5; *see also* Pl.'s Ex. 6 at ¶ 2.  The declarants

opined that the rates set forth in Plaintiff's fee request are reasonable and

consistent with prevailing market rates for work done in the Middle District,

including in Scranton.

Further, as Judge Caputo explained, the Community Legal Services, Inc.

("CLS") rates are an appropriate measure of reasonable market rates for litigation

in the Middle District, specifically where lawyers from firms in larger markets

such as New York or Philadelphia discount their usual billing rates and instead use

CLS rates in a fee request.  *See Paulus v. Cordero*, No. 3:12-CV-986, 2013 U.S.

Dist. LEXIS 20198, at *22 (M.D. Pa. Jan. 31, 2013) (approving CLS rates for

Philadelphia and New York attorneys for litigation in Scranton); *see also Clemens*, 264 F. Supp. 3d at 664 (using then-current CLS rate of $350 per hour as market rate in insurance litigation for lawyer with 11 years of experience; collecting Middle District cases approving CLS fee schedule to establish relevant market rates in Middle District litigation).

The rates a court should apply are those in effect when the petition is filed, not when the legal work was performed.  *See Lanni v. New Jersey*, 359 F.3d 146, 149–50 (3d Cir. 2001).  Despite that principle, Plaintiff's counsel seek reimbursement at discounted rates that reflect the 2014 CLS fee schedule, which are significantly lower than rates in the 2018 CLS fee schedule or their actual current rates.  *See* Pl.'s Ex. 5 at ¶¶ 10, 11.

COLTS claims that Mr. Schmidt's and Mr. Fine's declarations in support of Plaintiff's fee application are "inapt" because, COLTS says, they do not refer to what COLTS believes is the relevant forum (*i.e.*, Scranton).  COLTS Br. 38. However, both declarations do refer to Scranton.  Mr. Schmidt stated that attorneys in firms such as his bill at uniform rates in the Middle District "regardless of the location of the courthouse, *including those in Wilkes Barre and Scranton*."  Pl.'s Ex. 5 at ¶ 4 (emphasis added).  And Mr. Fine stated that he practiced law in the Middle District for more than 27 years, including in Scranton and Wilkes Barre, and, based on his decades of experience practicing throughout the District, believes

19

the 2014 CLS rates Plaintiff requests are fair and reasonable for top federal court

practitioners handling complex litigation in the Middle District.  Pl.'s Ex. 6 at ¶¶ 2,

4.

COLTS has not shown that Plaintiffs' record evidence is insufficient to

establish the reasonableness of the requested rates.  However, even if COLTS's

submission raises a question about rates, the Court should hold a hearing before

determining the prevailing rates.  *See Smith v. Philadelphia Hous. Auth.*, 107 F.3d

223, 225 (3d Cir. 1997) ("If hourly rates are disputed, the district court must

conduct a hearing to determine the reasonable market rates.").

### E.     Freethought Society's Motion for Fees Is Timely.

Without citing any controlling authority, COLTS claims that Plaintiff's

motion for fees is untimely because Plaintiff did not file it in the Third Circuit.

COLTS Br. 11–21.  However, as is reflected in authority COLTS itself relies upon,

a District Court may award fees—including appellate fees—following issuance of

the Third Circuit mandate and entry of judgment in the District Court where a

party did not file a fee request in the Third Circuit.  *See J.S. v. Blue Mt. Sch. Dist.*,

No. 3:07cv585, 2014 U.S. Dist. LEXIS 44478, at *27–28 (M.D. Pa. Mar. 31, 2014)

(awarding fees for appellate work in Third Circuit where no fee request was filed

in Third Circuit and where Third Circuit did not specifically remand for calculation

of fees); *see also Lozano v. City of Hazleton*, No. 3:06cv1586, 2015 U.S. Dist.

LEXIS 139308, at *5–8, 42 (M.D. Pa. Oct. 6, 2015) (awarding approximately $1.4

million in fees for all phases of litigation, including multiple appeals to the Court

of Appeals and to the United States Supreme Court, where no request for fees was

filed in either appellate court).

Here, when COLTS lost its motion for rehearing of the Third Circuit's

decision, COLTS immediately sought a stay of the matter so it could file a petition

for certiorari.  The Third Circuit granted that stay.  During the stay, the parties

discussed settlement, including the amount of Plaintiff's attorney's fee entitlement.

The stay remained in place until the end of January 2020, when COLTS announced

that it was not going to seek certiorari after all.

The Third Circuit lifted the stay and issued its mandate and judgment to this

Court at the end of January 2020.  Within two weeks, Plaintiff sought an extension

of time to file its motion for attorney's fees, an extension COLTS did not oppose.

ECF No. 93.  The Court granted that extension, vacated the judgment in favor of

COLTS, and entered judgment in favor of Freethought Society on February 14,

2020.  ECF Nos. 94–96.  In early March, as the COVID-19 pandemic started

affecting the United States and, more specifically, Ms. Tack-Hooper's family (now

resident in Washington state), Plaintiff requested an additional extension of time to

file, which again COLTS did not oppose and which the Court granted.  ECF Nos.

97, 98.  Plaintiff then timely filed the motion for fees and costs before the extended deadline.

The fee motion came within the time allowed under Rule 54(d) (as extended by the Court), which provides that the motion requesting fees must be filed within 14 days of entry of the judgment.  Fed. R. Civ. P. 54(d).

COLTS appears to argue that Plaintiff cannot request fees because it did not file a fee motion in the Third Circuit during the stay COLTS obtained to allow it to seek certiorari.  In support of this argument, COLTS relies on the Third Circuit's Local Rule of Appellate Procedure 108.1, regarding the timing of fee petitions filed in the Third Circuit.

Plaintiff does not dispute that, had it filed a fee petition in the Third Circuit, Local Rule of Appellate Procedure 108.1 would have governed the timing of that petition.  However, COLTS does not cite any controlling authority that applies Local Rule of Appellate Procedure 108.1 as a jurisdictional bar foreclosing a party from seeking its fees in the district court, and certainly none doing so when the opposing party sought and obtained a stay of the appellate process for purposes of seeking certiorari.  *See* COLTS Br. 17–18.  Contrary to COLTS's argument, *J.S.*, which COLTS relies on for other purposes, demonstrates that a party may seek its fees, including for appellate work, before the district court in the first instance after issuance of the mandate and entry of judgment in the district court.  *See J.S.*, 2014

22

U.S. Dist. LEXIS 44478, at *27–28, 40.  In fact, the ACLU of Pennsylvania has successfully petitioned for fee awards in other matters in district courts in Pennsylvania after appellate proceedings.  *See, e.g.*, *Lozano*, 2015 U.S. Dist. LEXIS 139308, at *5–8, 42.

Moreover, 42 U.S.C. § 1988 is one of the country's civil rights laws.  Courts construe such laws broadly in favor of extending their coverage and effecting their remedial purposes.  *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 700 (1978).  In plain language, the statute provides that the "court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Nothing in the statute purports to cut off a district court's power to award fees when a prevailing party makes the request in the district court following a successful appeal.

To the extent COLTS implies that it had no notice of the magnitude of Plaintiff's fee request while it was deciding whether to seek certiorari (COLTS Br. 20), it bears mention that the parties have engaged in settlement negotiations repeatedly throughout this litigation, including in December 2019, during the stay COLTS obtained and more than a month before COLTS announced it would not seek certiorari.  Thus, COLTS was not caught off guard and suffered no prejudice regarding its decision whether to file a petition for a writ of certiorari.

Accordingly, as in *J.S.* and *Lozano*, the Court may award Plaintiff its requested fees and costs, including fees incurred during the appeal.

## II.    CONCLUSION

For the foregoing reasons and those in the Freethought Society's opening submission, the Court should grant the Freethought Society's motion for fees and costs.

Respectfully submitted,

/s/ Stephen J. Shapiro
Theresa E. Loscalzo (Pa. ID No. 52031)
Stephen J. Shapiro (Pa. ID No. 83961)
SCHNADER HARRISON
SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
sshapiro@schnader.com
(215) 751-2000

Witold J. Walczak (Pa. ID No. 62976)
AMERICAN CIVIL LIBERTIES UNION
  OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
vwalczak@aclupa.org
(412) 681-8707

## **CERTIFICATE OF COMPLIANCE**

I, Stephen J. Shapiro, hereby certify that the foregoing brief complies with the word limit requirement of Local Rule of Civil Procedure 7.8(b)(2) as modified by the Court's May 13, 2020 Order (ECF No. 107).  According to the word count feature of Microsoft Word, the brief contains 5,551 words, excluding captions, tables, and signature blocks.

s/Stephen J. Shapiro

Date: May 15, 2020